1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

John V. Picone III (State Bar No. 187226)
Jeffrey M. Ratinoff (State Bar No. 197241)
C. Gideon Korrell (State Bar No. 284890)
HOPKINS & CARLEY
70 S First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:    (408) 286-9800
Facsimile:    (408) 998-4790

Attorneys for Plaintiffs
AVAGO TECHNOLOGIES U.S. INC.,
AVAGO TECHNOLOGIES GENERAL IP
(SINGAPORE), PTE. LTD and LAURENCE
MCCOLLOCH

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| AVAGO TECHNOLOGIES U.S., INC., a Delaware corporation; AVAGO TECHNOLOGIES GENERAL IP (SINGAPORE), PTE. LTD, a Singapore corporation,; LAURENCE R. MCCOLLOCH, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>NANOPRECISION PRODUCTS, INC.,  a Delaware corporation,<br><br>Defendant.<br><br>NANOPRECISION PRODUCTS, INC.; MICHAEL K. BARNOSKI; ROBERT R. VALLANCE; SHUHE LI; and KING-FU HII,<br><br>Counterclaimants,<br><br>v.<br><br>AVAGO TECHNOLOGIES LIMITED, USA; AVAGO TECHNOLOGIES U.S., INC.; AVAGO TECHNOLOGIES GENERAL IP (SINGAPORE), PTE. LTD.; and LAURENCE R. MCCOLLOCH,<br><br>Counter-Defendants. | CASE NO. 3:16-cv-03737 JCS<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:    January 6, 2017<br>Time:             9:30 a.m.<br>Dept:             Courtroom G - 15th Floor<br>Judge:            Hon. Joseph C. Spero<br>Case Filed:       July 7, 2016<br>Trial Date:       None |

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1402350.4

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................................................... 2

II.    PROCEDURAL AND FACTUAL BACKGROUND ................................................. 3

    A.    The Patents-in-Suit ......................................................................................... 3

    B.    The Parties' Business Relationship .................................................................. 4

    C.    The Parties' Inventorship Disputes ................................................................. 6

        1.    nPP Institutes a Derivation Proceeding with respect to the '379 Application ........................................................................................... 6

        2.    nPP Initiates an Action in the Superior Court of California in Santa Clara County ................................................................................... 7

        3.    Avago Initiates the Federal Action .................................................... 9

        4.    nPP's  Defective Counterclaim ...................................................... 10

III.   APPLICABLE LEGAL STANDARDS ................................................................... 12

IV.    LEGAL ARGUMENT .............................................................................................. 13

    A.    The Court Should Dismiss nPP's Claims at Issue in the First-Filed State Court Action to Avoid Piecemeal and Inconsistent Rulings Under the *Colorado River* Doctrine .................................................................................. 13

    B.    nPP's Second Cause of Action for Trade Secret Misappropriation Preempts Its Third and Fourth Causes of Action .......................................................... 15

        1.    nPP Fails to Allege Distinguishing Facts Necessary to Support its Conversion Counterclaim ............................................................... 17

        2.    The CUTSA Preempts Plaintiff's Fourth Cause of Action for Specific Recovery of Personal Property .................................................... 19

    C.    Plaintiff's Fourth Cause of Action Fails to State a Viable Claim Separate from its Third Cause of Action for Conversion .................................................. 20

    D.    nPP's Sixth Cause of Action Relies Upon Alleged Acts of Misappropriation That Occurred Before the Effective Date of the DTSA .......... 20

    E.    The Court Should Deny nPP Leave to Amend with Respect to Its Third, Fourth and Sixth Causes of Action .................................................................. 21

V.     CONCLUSION ........................................................................................................ 22

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1402350.4

- i -

NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*,
  843 F.2d 1253 (9th Cir. 1988)............................................................................................. 14

*Angelica Textile Servs., Inc. v. Park*,
  220 Cal. App. 4th 495 (2013)............................................................................................. 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................................... 13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................................... 13

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) .................................................................................................... 13, 14

*Digital Envoy, Inc. v. Google, Inc.*,
  370 F. Supp. 2d 1025 (N.D. Cal. 2005) ............................................................................ 16

*Epstein v. Wash. Energy Co.*,
  83 F.3d 1136 (9th Cir. 1996)............................................................................................. 13

*Ferdik v. Bonzelet*,
  963 F.2d 1258 (9th Cir.1992) ........................................................................................... 22

*Foman v. Davis*,
  371 U.S. 178 (1962) .......................................................................................................... 22

*Heller v. Cepia, L.L.C.*,
  No. 11–cv–01146–JSW, 2012 WL 13572 (N.D. Cal. Jan. 4, 2012) ................................... 17

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
  171 Cal. App. 4th 939 (2009)...................................................................................... 15, 16

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ...................................................................................................... 16

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001)............................................................................................. 13

*Loop AI Labs Inc. v. Gatti*,
  2015 WL 5158461 (N.D. Cal. Sept. 2, 2015) .................................................................... 18

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008)........................................................................................... 13

*Mattel, Inc. v. MGA Entertainment, Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2011)................................................................ 16, 17, 18, 19

*MedioStream, Inc. v. Microsoft Corp.*,
  869 F. Supp. 2d 1095 (N.D. Cal. 2012) ....................................................................... 18, 19

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
  460 U.S. 1 (1983) .............................................................................................................. 14

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*,
  656 F.3d 966 (9th Cir. 2011)............................................................................................. 14

842\1402350.4

- ii -

NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH
COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

**TABLE OF AUTHORITIES**
(continued)

Page

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210 (6th Dist. 2010)............................................................. 2, 16, 17, 18, 19

*Smith v. Pac. Props. & Dev. Corp.*,
    358 F.3d 1097 (9th Cir. 2004).......................................................................................... 22

*State Farm Mut. Auto. Ins. Co. v. Department of Motor Vehicles*,
    53 Cal. App. 4th 1076 (1997)........................................................................................... 20

*SunPower Corp. v. SolarCity Corp.*,
    No. 12–cv–00694–LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ........................ 16, 17

**STATUTES**

18 U.S.C. § 1836(b)(1)........................................................................................................ 20

35 U.S.C. § 256 ........................................................................................................ 10, 11, 15

CA Business and Professions Codes § 17200.................................................................. 7, 8

CA Civil Code §§ 3426, *et seq.*......................................................................................... 1, 15

**OTHER AUTHORITIES**

5 Witkin, Cal. Proc. 5th Plead §§ 692, 702 (2008) ........................................................ 20

Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, 130 Stat 376, 376, 382...................... 21

**RULES**

Federal Rule of Civil Procedure 12(b)(6) .............................................................. 1, 2, 12, 13, 17

Federal Rule of Civil Procedure 26(f).......................................................................... 10

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1402350.4

- iii -

NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH
COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 6, 2017 at 9:30 a.m, or as soon as this matter may be heard in Courtroom G, 15th Floor of the above entitled court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs and Counter-Defendants Avago Technologies U.S., Inc., Avago Technologies General IP (Singapore), PTE, Ltd., and Laurence McColloch (collectively "Avago") to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and applicable case law dismissing the Third and Fourth Causes of Action asserted in the Counterclaim filed by Defendant and Counterclaimant Nanoprecision Products, Inc. ("nPP").

Avago's motion is made on the grounds that the First through Fifth Causes of Action in the Counterclaim filed by Counterclaimants nanoPrecision Products, Inc., Michael K. Barnoski, Robert R. Vallance, Shuhe Li, and King-Fu Hii, (collectively "nPP") are identical to claims asserted by nPP against Avago in a first-filed state court action, which is currently pending in the Superior Court of California in Santa Clara County ("the State Court Action"). The Court should dismiss these claims on the grounds, *inter alia*, that allowing parallel actions to proceed simultaneous could result in piecemeal litigation and inconsistent decisions.

Avago is also seeking the dismissal of the Third Cause of Action for Conversion and Fourth Cause of Action for Specific Recovery of Personal Property asserted in the Counterclaim on the grounds that they fail to state claims because they are preempted by the California Uniform Trade Secret Act, Civ. Code §§ 3426 *et seq.*

Finally, Avago is seeking the dismissal of the Sixth Cause of Action for Trade Secret Misappropriation Under the Defend Trade Secrets Act of 2016 ("DTSA") asserted in the Counterclaim on the grounds that any of the alleged acts of misappropriation occurred before the effective date of the law, May 11, 2016.

This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities below, Avago's Request for Judicial Notice and the pleadings and papers on file in this action, such argument and evidence as may be adduced at the hearing, and such other matters as the Court may properly consider.

/ / /

842\1402350.4

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

1

**RELIEF REQUESTED**

2

Avago respectfully requests that nPP's First through Sixth Causes of Action asserted in its

3

Counterclaim be dismissed pursuant to FRCP 12(b)(6) and applicable case law.

4

**MEMORANDUM OF POINTS AND AUTHORITIES**

5

**I.     INTRODUCTION**

6

Plaintiffs and Counter-Defendants Avago Technologies Limited, USA, Avago

7

Technologies General IP (Singapore), Pte. Ltd., and Laurence McColloch (collectively "Avago")

8

seek to dismiss the First through Fifth Causes of Action in the Counterclaim filed by Defendant

9

and Counterclaimants nanoPrecision Products, Inc., Michael K. Barnoski; Robert R. Vallance;

10

Shuhe Li; and King-Fu Hii (collectively "nPP" or "Counterclaimants") on the grounds that nPP

11

previously asserted the exact same causes of action in a lawsuit initiated by nPP against Avago,

12

which are still pending in the Superior Court of California in Santa Clara County ("the State

13

Court Action").[1]   nPP should not be entitled to two bites at the apple with respect to its common

14

law claims against Avago.

15

Avago is also seeking to dismiss nPP's Third Cause of Action for Conversion and Fourth

16

Causes of Action for Specific Recovery of Personal Property on the grounds that they are

17

preempted by the California Uniform Trade Secrets Act ("CUTSA").  Courts in the Northern

18

District have repeatedly recognized that the CUTSA preempts all other non-contractual statutory

19

and common-law claims predicated on the theft of alleged trade secrets under the holding in

20

*Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210 (6th Dist. 2010).  Similar to *Silvaco*, the

21

gravamen of nPP's Counterclaim is: (1) the alleged disclosure of confidential and proprietary

22

information that allegedly constitutes its trade secrets to Avago; and (2) Avago's alleged

23

misappropriation of those trade secrets by incorporating them into U.S. Patent Application

24

13/658,379 (the "'379 Application"), U.S. Patent No. 9,011,025 ("the '025 Patent"), and U.S.

25

Patent No. 9,400,360 ("the '360 Patent").  Notably, both the conversion and specific recovery of

26

27

[1] Although nPP initiated the State Court Action nearly two years ago, on February 19, 2015, the case remains in the initial pleading stages, with a hearing on the Demurrer of nPP's Second Amended Complaint scheduled for January 27, 2017.

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\1402350.4                           - 2 -

NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH
SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

personal property causes of action share a common nucleus of facts concerning the alleged

disclosure and misuse of the *same* confidential and proprietary information and the *same* alleged

harm that forms the basis of the CUTSA claim.  In this regard, nPP's Counterclaim does not

identify a single item of tangible property that is distinguishable or has any value apart from

nPP's alleged confidential and proprietary information already subject to its trade secret

misappropriation claim.  nPP further alleges that its damages are based on Avago's alleged

possession, use, and publication of its *confidential and proprietary* property.  In short, the sole

basis for nPP's conversion and the recovery of personal property claims is the Avago's alleged

use of nPP's trade secrets.  As a result, both causes of action are preempted by the CUTSA and

thus fail to state viable claims.

Avago is further seeking to dismiss of the Sixth Cause of Action for Trade Secret

Misappropriation Under the Defend Trade Secrets Act of 2016 ("DTSA") asserted in the

Counterclaim because the DTSA does not apply retroactively.  Rather, it applies to trade secret

misappropriation occurring on or after the date of the DTSA's enactment, May 11, 2016.  The

complained of alleged wrongful acts of "disclosing to the world" the information contained in the

'379 Application and the applications that published and issued as the '025 Patent and '360 Patent

all occurred well before May 11, 2016.  nPP further admits to learning of the alleged acquisition

and disclosure of its alleged trade secrets contained in the '379 Application in August 2014 and

those contained in the '025 Patent and '360 Patent in February 2015.   The Counterclaims contain

no allegations of any new acts of misappropriation that occurred subsequent to the enactment of

the DTSA.  Consequently, the Court should dismiss nPP's Sixth Cause of Action without leave to

amend.

## II.      PROCEDURAL AND FACTUAL BACKGROUND

### A.      The Patents-in-Suit

On or about October 23, 2012, Larry McColloch filed the '379 Application and assigned

ownership thereof to Avago Technologies General IP (Singapore) PTE. LTD.  On April 24, 2014,

the USPTO published the '379 Application.  The '379 Application claims stamped optical bench

designs, some of which McColloch had disclosed to nPP during the course of the parties'

business discussions under the NDA.  However, the '379 Application also contained embodiments of stamped optical benches that were not disclosed to nPP during the course of those discussions.

At the same time McColloch was working on his stamped optical bench designs in or around June and July 2010, he was also working on designs for single mode fiber optic communications modules, which generally incorporate his stamped optical bench designs. Specifically, McColloch independently developed a modified TO-can assembly having a side-entry fiber receptacle, which could be used for a transmitter optical sub-assembly ("TOSA") or a receiver optical subassembly ("ROSA") in a single mode fiber optic communications module.

On or about December 19, 2011, McColloch filed U.S. Patent Application No. 13/329,380 entitled "Modified Transistor Outline (TO)-CAN Assembly for Use in Optical Communications and a Method" ("the '380 Application") and assigned ownership thereof to Avago Technologies Fiber IP (Singapore) Pte. Ltd.[2]  On April 24, 2014, the USPTO published the '380 Application, and it later issued as the '025 Patent.

On March 24, 2015 Avago filed U.S. Patent Application 14/666,427 ("the '427 Application"), which is a continuation of the '025 Patent.  On July 9, 2015, the USPTO published the '427 Application, and issued on July 26, 2016 as the '360 Patent.

### B.    The Parties' Business Relationship

During the relevant time frame, McColloch was employed as an engineer in the Fiber Optic Products Division at Avago Inc.  For many years prior to and as far back as 2002, McColloch had worked on developing the design of single mode optical benches. McColloch had first considered making a stamped optics for fiber optic use as early as in 2001 and was first exposed to the idea of stamping optics as early as 1983.

On or about July 12, 2010, nPP contacted Avago Inc. to offer its stamped metal manufacturing services to Avago Inc. McColloch was interested in learning about nPP's capabilities because he already envisioned several applications in fiber optic communications

---

[2] This application was subsequently assigned to Avago Technologies General IP (Singapore) Pte. Ltd. on October 30, 2012.

modules in which stamped metal parts could potentially be used in place of their conventional counterparts (typically made through the chemical milling process) at considerable cost savings.

On or about July 14, 2010, nPP representative Ken Ahmad, Vice President Sales and Marketing of nPP, executed a bi-lateral non-disclosure agreement ("2010 NDA").  On or about July 16, 2010, nPP representatives visited the offices of Avago Inc., located at 350 W. Trimble Road, San Jose, California, to present its manufacturing capabilities, including precision metal stamping capabilities useful for inexpensively manufacturing small devices. Stamping processes typically involve interposing a thin sheet of metal between two dies having surfaces of complementary contours and forcing the dies together until an imprint is formed on the interposed metal.  During the July 16, 2010 meeting, McColloch generally shared one of his optical bench designs that he believed could be manufactured by a stamping process proposed by nPP.

Subsequent to the July 16, 2010 meeting and under the protection of the 2010 NDA, McColloch shared with nPP, including its employees Michael Barnoski, Ryan Vallance and Shuhe Li, several of his optical bench designs that had the potential of being made through nPP's stamping process.  At least one of these designs was based on the optical bench disclosed in U.S. Patent No. 7,667,324, which McColloch is a named inventor.

On or about October 23, 2012, McColloch filed the '379 Application.  The '379 Application contains claims of optical bench designs which McColloch had disclosed to nPP during the course of the parties' business discussions under the NDA.  However, the '379 Application also contains embodiments of optical benches that were not disclosed to nPP during the course of those discussions.  On April 24, 2014, the USPTO published the '379 Application.

At the same time McColloch was working on his optical bench designs in or around June and July 2010, he was also working on designs for single mode fiber optic communications modules, which generally incorporate his optical bench designs. Specifically, McColloch independently developed a modified TO-can assembly having a side-entry fiber receptacle, which could be used for a transmitter optical sub-assembly ("TOSA") or a receiver optical subassembly ("ROSA") in a single mode fiber optic communications module.

On December 19, 2011, McColloch filed U.S. Patent Application No. 13/329,380, which

Hopkins & Carley
Attorneys At Law
San Jose • Palo Alto

842\1402350.4

NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

contains claims of a modified TO-can assembly having a side-entry fiber receptacle for use in a TOSA.   On April 24, 2014, the USPTO published the '380 Application, and it later issued as the '025 Patent.  On March 24, 2015 Avago filed U.S. Patent Application 14/666,427 ("the '427 Application"), which is a continuation of the '025 Patent (with the exception of the claims, a continuation patent application contains the identical material as the parent application).  On July 9, 2015, the USPTO published the '427 Application, and it later issued as the '360 Patent.

### C.    The Parties' Inventorship Disputes

#### 1.    nPP Institutes a Derivation Proceeding with respect to the '379 Application

On April 23, 2015, nPP filed a patent application with the USPTO, entitled "Coupling Device Having a Stamped Structured Surface for Routing Optical Data Signals" and was assigned U.S. Patent Application No. 14/695,008 ("the '008 Application").  A cursory review of that application suggest that nPP used the inventions disclosed in Avago's '379 Application as the primary basis to prepare nPP's own applications.

On the following day, nPP filed a Petition to Institute Derivation Proceeding with the USTPO (No. DER2015-00009) ("the Petition") to correct the listing of named inventors on Avago's '379 application.  *See* Declaration of Jeffrey M. Ratinoff in Support of Avago's Motion to Dismiss ("Ratinoff Decl."), Exh. 1.  In the Petition, nPP alleged that "nPP employees Dr. Michael Barnoski, Dr. Ryan Vallance and Dr. Shuhe Li (the 'nPP Inventors') invented improved versions of Avago's products . . . ."  nPP further alleged that "[t]he '379 application claims inventions that Mr. McColloch derived from the nPP Inventors under the NDA, and that nPP has claimed in its own patent application."  Through the Petition "nPP respectfully requests that the Board instituted a derivation proceeding to correct the '379 Application to include Dr. Barnoski, Dr. Vallance and Dr. Li as named inventors, and to delete Mr. McColloch."  As of the time of the filing of this motion, the Petition is still pending.

/ / /

/ / /

/ / /

NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

### 2. nPP Initiates an Action in the Superior Court of California in Santa Clara County

On February 19, 2015, nPP initiated the State Court Action against Avago, filing its original complaint alleging breach of contract, trade secret misappropriation (under CUTSA), intentional interference with contractual relations, unfair competition, conversion, specific recovery, breach of fiduciary duty, unjust enrichment, fraud, and declaratory relief.

On or about March 24, 2015, Avago communicated to nPP that its non-contractual claims in the original complaint were preempted by nPP's CUTSA claim.  Avago further explained that to the extent the original complaint alleged that nPP was the true owner of the '379 Application, nPP was raising an inventorship dispute that was not properly before the state court due to a lack of subject matter jurisdiction.  nPP seemingly acknowledged these defects and agreed to file an amended complaint that would presumably address them.

On April 9, 2015, nPP filed its First Amended Complaint ("FAC") in the State Court Action.[3]  Ratinoff Decl., Exh. 2.  However, nPP did nothing to address the CUTSA preemption and subject matter jurisdiction issues.  Rather, nPP's only amendments were simply removing its claim for unjust enrichment, correcting several typos, and making superficial line edits to several other causes of action in the FAC.

On May 11, 2015, Avago and McColloch filed a demurrer and motion to strike in response to the FAC on two grounds.  The first was that nPP's common law and statutory tort claims were preempted by its trade secret misappropriation claim brought under the California Uniform Trade Secrets Act (CUTSA).  The second was that the state court did not have subject matter jurisdiction to adjudicate several of nPP's claims and award ownership of the '379 Application to nPP because a determination of those issues necessarily required a determination

---

[3] The FAC asserted nine causes of action for: (1) breach of contract; (2) misappropriation of trade secrets; (3) intentional interference with contractual relations; (4) unfair competition under California Business and Professions Codes § 17200 ("UCL"); (5) conversion; (6) specific recovery of personal property; (7) breach of fiduciary duty; (8) fraud; and (9) declaratory relief. Each and every one of these claim is based on what nPP alleges are "actions in breach of non-disclosure agreements, misappropriation of trade secrets and other additional wrongful conduct designed to interfere with nPP's intellectual property rights."

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\1402350.4

- 7 -
NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

of inventorship of the '379 Application and each claim therein.  Avago and McColloch pointed out that nPP's repeated allegations that it was the source of the inventions in the '379 Application effectively raised claims of inventorship and that nPP was seeking identical relief in the Petition before the USPTO.

In opposition, nPP argued that it was only seeking a determination of ownership in the State Court Action and that such a determination "is not necessarily based on any claim of inventorship."  nPP further confirmed that it had "initiated a proceeding in the USPTO to determine inventorship of the ['379 Application]."

On April 1, 2016, the court in the State Court Action sustained the demurrer on the preemption issue, but overruled the demurrer and motion to strike to the extent they raised the issue of subject matter jurisdiction in relation to the disposition of the '379 Application. On the preemption issue, the court held that the CUTSA preempted nPP's claims for intentional interference with contractual relations, unfair competition under Cal. Bus. & Prof. Code § 17200 ("UCL"), conversion, specific recovery of personal property, breach of fiduciary duty and fraud. Ratinoff Decl., Exh. 3 ("April 1st Order").  The court found that the CUTSA preempted nPP's conversion claim because it was unclear whether nPP was seeking damages based upon the conversion of tangible property "separate from the trade secret information contained therein." *Id.* at 10:23-27.  The court similarly determined that the CUTSA preempted nPP's claim for specific recovery of personal property because it was based on nPP's property rights in its confidential and proprietary information "as opposed to separate and distinct property rights in the documents and materials themselves." *Id.* at 9:24-28.

On May 2, 2016, nPP filed its verified SAC that asserted five causes of action for (1) breach of contract; (2) misappropriation of trade secrets; (3) conversion; (4) specific recovery of personal property; and (5) declaratory relief.  Ratinoff Decl., Exh. 4. These claims were predicated on the same operative facts that nPP alleges give rise to its "actions in breach of non-disclosure agreements, misappropriation of trade secrets and other additional wrongful conduct designed to interfere with nPP's intellectual property rights." *Id.*, Exh. 4 ("SAC"), ¶ 1.  With the exception of the correction of inventorship of the '025 and '360 patents and a claim asserted

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\1402350.4

- 8 -

NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

under the Defend Trade Secrets Action, the claims asserted in the SAC are identical to those asserted in nPP's counterclaims in this action.

nPP continued to claim that Avago used its trade secrets relating to "precision stamping techniques as well as the structure of such components" for "fiber optic applications, including optical benches" to prepare and file U.S. Patent Application 13/658,379 ("the '379 Application") which the USPTO then published in April 2014 thereby "destroying the confidentiality and secrecy" of its alleged trade secrets.  SAC, ¶¶ 39-40, 52.  However, nPP expanded the scope of the SAC to include claims of "ownership" of the '025 Patent and U.S. Application No. 14/666,427, which has since issued as the '360 Patent.  Specifically, nPP alleged that "[t]he application which led to the '025 Patent, and has the same specification to that of the [application which matured into the '025 Patent], used nPP's proprietary and confidential information as the primary basis to prepare the applications."  SAC ¶¶ 39-40, 43.  nPP further alleges that the '025 Patent and the '360 Patent "included the concepts developed by nPP" (SAC ¶43), and that nPP is "entitled to property rights in the Avago Applications," which includes the applications that have issued into the '025 Patent and the '360 Patent (SAC ¶¶ 66-69).  Based on the foregoing allegations, nPP's SAC seeks a declaration of its property rights "including rights in the Avago Applications and any others derived from nPP confidential and property information or trade secrets shared with Avago Technologies."  SAC at ¶ 69.  nPP goes further to request the court in the State Court Action for "a declaration that nPP is the proper owner of [the '025 Patent and the '360 Patent]."  SAC at 12:20-23.

nPP's claims for conversion and specific recovery of personal property continued to incorporated by reference and relied upon the alleged misappropriation of nPP's trade secrets. Avago thus filed another demurrer based on the CUTSA preempting these claims.  This demurrer is presently scheduled to be heard by the court in the State Court Action on January 27, 2017.

### 3.    Avago Initiates the Federal Action

Due to the SAC alleging that nPP was the source of the inventions contained in the '025 Patent and the '360 Patent, nPP is effectively disputing the inventorship of these patents.  Based on such allegations and the fact that nPP previously initiated a derivation proceeding before the

842\1402350.4

- 9 -

USPTO to remove McColloch as an inventor from the '379 Application, it appeared that nPP

would bring a suit to seek relief in a Federal District Court correcting inventorship of the '025

Patent and the '360 Patent pursuant to 35 U.S.C. § 256.   As such, Avago initiated the present

action for declaratory relief on the issue of inventorship with respect to the '025 Patent, and later

amended its complaint to include the '360 Patent once it issued.   *See* Dkt. Nos. 1 and 15.

### 4.      nPP's  Defective Counterclaim

On or about September 9, 2016, the parties conducted their Rule 26(f) conference.  During

that conference, Avago agreed to provide nPP an extension to October 17, 2016 to respond to the

FAC with the understanding that nPP would potentially dismiss the State Court Action and re-

assert those claims in its Counterclaim.  Avago offered to work with nPP on the logistics to

ensure that all federal and state law claims between the parties would be resolved in one forum in

an efficient manner.  In this regard, Avago indicated a willingness to join in a request for this

Court to exercise supplemental jurisdiction over nPP's CUTSA, breach of contract and

declaratory relief claims if nPP agreed to (1) dismiss its substantively defective claims for

conversion and return of specific property claims with prejudice, and (2) dismiss the balance of

the State Court Action without prejudice.

Rather than work with Avago on ensuring that there was no duplication of claims, nPP

simply filed its Counterclaim that asserts virtually the same operative facts.  *See* Ratinoff Decl.,

Exh. 5; *Compare* SAC, ¶¶ 2, 8-44 *and* Dkt. No. 23, ¶¶ 2, 13-51.[4]  The Counterclaim also contains

***identical*** claims under California law for (1) breach of contract [*Compare* SAC, ¶¶ 45-49 *and*

Dkt. No. 23, ¶¶ 55-59]; (2) misappropriation of trade secrets [*Compare* SAC, ¶¶ 50-55 *and* Dkt.

No. 23,¶¶ 60-65]; (3) conversion [*Compare* SAC, ¶¶ 56-60] *and* Dkt. No. 23, ¶¶ 67-70]; (4)

specific recovery of personal property [*Compare* SAC, ¶¶ 61-65 *and* Dkt. No. 23, ¶¶ 71-75]; and

---

[4] It appears that Paragraphs 30 and 32 of the Counterclaims add some additional details concerning the meetings referenced therein, but are otherwise identical to paragraphs 25 and 27 of the SAC.  Similarly, paragraphs 49 and 50 of the Counterclaims appear to be substantively the same as paragraph 43 of the SAC.  However, the facts are alleged in a different order.  Paragraph 48 of the Counterclaims contains additional facts concerning the current status of the '379 Application that were not previously alleged in the SAC.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1402350.4                                        - 10 -
NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH
SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

declaratory relief [*Compare* SAC, ¶¶ 66-69 *and* Dkt. No. 23, ¶¶ 79-79] that nPP previously asserted in the SAC.[5]  Finally, nPP seeks identical relief in conjunction with its claims based on California law.  *Compare* SAC at 12:7-26 *and* Dkt. No. 23 at 35:26-36:14, 36:21-23.

nPP's counterclaims for conversion and specific recovery of personal property also suffer from the same fatal defect of being preempted by the CUTSA as their counterparts in the SAC. In its Second Cause of Action for Trade Secret Misappropriation, nPP incorporates the general allegations of the SAC and specifically alleges that Avago acquired its "confidential and proprietary trade secret information" pursuant to the NDAs.  Dkt. No. 23, ¶¶ 60-61.  nPP further alleges that it took "reasonable measures to protect the secrecy and confidential nature of the information including . . . marking written materials as nPP confidential and proprietary prior to disclosure to Avago Technologies . . . ."  *Id.*, ¶ 64.  Lastly, nPP claims that it suffered damages as a result of the use and publication of its confidential and proprietary information in the '379 Application"), the '025 Patent and '360 Patent.  *Id.*, ¶ 65.

nPP expressly incorporates by reference and relies on the alleged misappropriation of nPP's trade secrets in its third and fourth causes of action.  *See* SAC, ¶ 66 (conversion), ¶ 71 (recovery of personal property).  nPP attempts to overcome preemption by alleging that Avago is in the possession of nPP's confidential and proprietary property in the form of  "materials, documents, files and models" that were provided to Avago under the NDAs.  SAC, ¶¶ 67-68, 72. However, nPP does not allege additional facts that distinguish the allegedly taken physical property from the alleged trade secrets embodied therein.  *See id.*  In other words, nPP's Counterclaim fails to allege a single item of tangible property that has any stand-alone value apart from nPP's alleged confidential and proprietary information subject to its CUTSA claim. Consequently, as discussed in detail below, these counterclaims are subject to dismissal.

Finally, nPP added a Sixth Cause of Action for Trade Secret Misappropriation under DTSA") in its Counterclaims.  Dtk. No. 23 at ¶¶ 80-86.  In support of this claim, nPP alleges that

---

[5] The only substantive difference between the facts in the SAC and the Counterclaims is nPP's addition of Michael K. Barnoski, Robert R. Vallance, Shuhe Li, and King-Fu Hii (the purported inventors of the '379 Application and the '025 Patent and the '360 Patent) as counterclaimants and a claim under the DTSA and two claims pursuant to 35 U.S.C. § 256 in the later.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1402350.4                                      - 11 -
NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737-JCS

1    the actual misappropriation of its alleged proprietary and confidential information with respect to

2    the '379 Application occurred prior to October 23, 2012 when Avago filed it with the USPTO.

3    *Id.*, ¶ 44, Exh. C.  nPP then alleges that such information was again wrongfully disclosed by

4    Avago on April 24, 2014 when the U.S. Patent and Trademark Office ("USPTO") published the

5    '379 Application.  *Id.*, ¶ 44.  Notwithstanding the earlier publication of the '379 Application, nPP

6    claims that it did not learn of the '379 Application and Avago's alleged misappropriation until

7    August 2014.  *Id.*, ¶ 47.

8         Similarly, nPP alleges that it learned in February 2016 that Avago Technologies filed U.S.

9    Patent Application 13/329,380 on December 19, 2011, which matured into the '025 Patent.  Dtk.

10   No. 23 at ¶ 49, Exh. D.  The USPTO published this application on June 20, 2013 and issued the

11   '025 Patent on April 21, 2015.  *Id.*, Exh. D.  nPP further alleges that Avago filed U.S. Patent

12   Application 14/666,427, which published on July 9, 2015, and matured into the '360 Patent that

13   issued on July 26, 2016.  *Id.*, ¶ 49, Exh. E.  nPP then alleges that "[t]he application which led to

14   the '025 Patent, and has the same specification as that which led to the '360 Patent, also used

15   nPP's proprietary and confidential information as the primary basis to prepare the applications.

16   These two applications included the concepts developed by nPP and provided to McColloch and

17   Avago Technologies under the NDA . . . ." *Id.*, ¶ 50.

18        nPP alleges that Avago's misappropriation of its trade secrets occurred when Avago "took

19   nPP's confidential and proprietary information and included it in the Avago Applications . . . ."

20   and "the Avago Applications disclosed such information to the world when the applications were

21   published and again when the '025 Patent issued, destroying the confidentiality and secrecy of the

22   information . . . ." *Id.*, ¶ 84.[6]  Consequently, none of the alleged acts of misappropriation and

23   nPP's alleged discovery thereof occurred on or after the DTSA's effective date of May 16, 2016.

24   **III.    APPLICABLE LEGAL STANDARDS**

25        The Court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when

26

27   ───────────────
     [6] nPP defines the "Avago Applications" as the "the '379 Application (Exhibit C), the application
     which led to the '025 Patent (Exhibit D) [and] the application which led to the '360 Patent
28   (Exhibit E)."  Dtk. No. 23 at ¶ 51.

NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH
SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

1    it does not contain sufficient facts to state a plausible claim on its face.  *See Bell Atlantic Corp. v.*

2    *Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

3    factual content that allows the court to draw the reasonable inference that the defendant is liable

4    for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility

5    standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

6    that a defendant has acted unlawfully."  *Id.* (*quoting Twombly*, 550 U.S. at 557). "While a

7    complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

8    allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

9    more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

10   will not do. Factual allegations must be enough to raise a right to relief above the speculative

11   level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

12          For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all

13   allegations of material fact as true and construes the pleadings in the light most favorable to nPP.

14   *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).   The

15   Court may also consider documents attached to the complaint, documents relied upon but not

16   attached to the complaint when authenticity is not contested, and matters of which the Court takes

17   judicial notice.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).  The Court

18   need not, however, accept as true pleadings that are no more than legal conclusions or the

19   "formulaic recitation of the elements of a cause of action." *Iqbal*, 555 U.S. at 678 (quoting

20   *Twombly*, 550 U.S. at 555).  Mere "conclusory allegations of law and unwarranted inferences are

21   insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy*

22   *Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *accord Iqbal*, 555 U.S. at 677–80.

23   **IV.    LEGAL ARGUMENT**

24         **A.     The Court Should Dismiss nPP's Claims at Issue in the First-Filed State
              Court Action to Avoid Piecemeal and Inconsistent Rulings Under the**
25            ***Colorado River* Doctrine.**

26          nPP's First through Fifth Causes of Action are identical to their counterparts asserted in

27   the SAC filed in the first-filed State Court Action.  Thus, the Court should not allow nPP to

28   maintain parallel claims in state and federal court.  Under *Colorado River Water Conservation*

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\1402350.4                            - 13 -
NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH
SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

*Dist. v. United States*, 424 U.S. 800, 813 (1976), courts consider eight factors when determining whether to dismiss or stay a parallel federal proceeding: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011). Determination of whether to stay or dismiss a parallel federal action does not rest on a balancing of the important factors relevant to the decision as they apply in a given case. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 16 (1983).

Here, the *Colorado River* factors heavily favor a dismissal (or stay) of nPP's First through Fifth Causes of Action asserted in its Counterclaims.  Avago submits that the four most important considerations in this case are that (1) state law provides the rule of decision on the merits of these claims; (2) allowing parallel actions to proceed simultaneous could result in piecemeal litigation and inconsistent decisions; (3) nPP is forum shopping; and (4) the State Court Action was initiated first in February 2015 where the state court can adequately protect the rights of nPP with respect to its state law claims.

There is no question that the State Court Action was first-filed and first assumed jurisdiction over what are claimed based on California law.  Moreover, there is more than the mere possibility of piecemeal litigation.  "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988) (upholding a *Colorado River* dismissal, in part to avoid piecemeal litigation).  The Counterclaim raises issues and claims ***identical*** to those currently pending in the State Court Action.  While nPP may be seeking additional remedies in federal court, both this Court and the state courts presiding over nPP's claims for breach of contract, trade secret misappropriation, and declaratory relief will

/ / /

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto

842\1402350.4

NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

need to address the same legal and factual issues.[7]  As such, the state court's adjudication of these claims could result in inconsistent rulings.

nPP's reassertion of its conversion and return of specific property claims in this Action is particularly problematic and appears to be nothing more than seeking a second bite at the apple. These claims were already dismissed once by the state court on the grounds of preemption by the CUTSA and are now subject to a pending second demurrer in the State Court Action based on the same grounds.  By asserting identical claims in this action, nPP may be hoping for a better result under the notice pleading standards that are applicable in federal court.

Finally, nPP's claims in the State Court Actions were filed long before nPP filed its counterclaim in this action on October 17, 2016.  The State Court Action was initiated almost two years ago and there are no serious concerns that state court proceeding will not adequately protect the rights of nPP under the contracts at issue and the CUTSA. Thus, the most efficient and equitable remedy is to either stay or dismiss the First Through Fifth Causes of Action asserted in nPP's Counterclaim pending the resolution of the State Court Action.[8]

**B.    nPP's Second Cause of Action for Trade Secret Misappropriation Preempts Its Third and Fourth Causes of Action.**

The CUTSA is a comprehensive statutory scheme establish in California that preempts other non-contractual remedies for the taking and misuse of confidential business information. *See* Civ. Code §§ 3426 *et seq*.  It solely "occupies the field" of common law claims based on the misappropriation of a trade secret.  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009).  Thus, both statutory and common law tort claims are displaced by the CUTSA where they are either "based upon misappropriation of a trade secret . . .

---

[7] Avago maintains that the parties' respective causes of action under 35 U.S.C. § 256 should proceed as the determination of inventorship of the '025 Patent and '360 Patent is at the heart of this action and is a necessary precursor for determining the balance of nPP's claims for trade secret misappropriation and breach of contract.

[8] Alternatively, Avago remains agreeable to allowing nPP's state law counterclaims for trade secret misappropriation, breach of contract and declaratory relief to proceed so long as nPP agrees to (1) dismiss its substantively defective claims for conversion and return of specific property claims with prejudice, and (2) dismiss the balance of the State Court Action without prejudice.

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto

842\1402350.4                             - 15 -
NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

1    or they are based upon no legally significant events at all." *Silvaco Data Sys. v. Intel Corp.*, 184

2    Cal. App. 4th 210, 236 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior*

3    *Court,* 51 Cal. 4th 310 (2011).

4           A claim cannot simply depend on a "different theory of liability" to survive the CUTSA's

5    suppressive effect.  *See id.*; *K.C. Multimedia*, 171 Cal. App. 4th at 957-59, n. 7.  The claim must

6    be based on more than "the same nucleus of facts as the misappropriation of trade secrets claim

7    for relief." *K.C. Multimedia*, 171 Cal. App. 4th at 958 (quoting *Digital Envoy, Inc. v. Google,*

8    *Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)).  More importantly, the California legislature

9    made the CUTSA the exclusive non-contractual civil remedy of a property right vesting in

10   confidential and proprietary information.  *K.C. Multimedia*, 171 Cal. App. 4th at 957 (the

11   "CUTSA's 'comprehensive structure and breadth' suggests a legislative intent to occupy the

12   field.").  Thus, the acquisition, disclosure, or use of confidential information that falls outside of

13   the CUTSA's definition of a trade secret does not give rise to any liability, even when that

14   liability is couched in terms of a separate tort or statutory violation.  *Silvaco*, 184 Cal. App. 4th at

15   239, fn. 21 (information that is not a trade secret or protected by some other provision of law

16   cannot be converted); *accord Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 987

17   (C.D. Cal. 2011) (recognizing that the CUTSA "supersedes claims based on the misappropriation

18   of confidential information, whether or not that information meets the statutory definition of a

19   trade secret") (citing same).  As a result, the "CUTSA provides **the exclusive civil remedy** for

20   conduct falling within its terms, so as to supersede other civil remedies 'based upon

21   misappropriation of a trade secret.'" *Silvaco*, 184 Cal. App. 4th at 236 (*quoting Digital Envoy*,

22   370 F.Supp.2d at 1035) (emphasis added).

23          Notably, the majority of district courts in California that have considered *Silvaco* have

24   held that CUTSA supersedes claims based on the misappropriation of confidential and proprietary

25   information regardless of whether it is labeled "trade secret." *See*, *e.g.*, *SunPower Corp. v.*

26   *SolarCity Corp.*, No. 12–cv–00694–LHK, 2012 WL 6160472, at *6, *13 (N.D. Cal. Dec. 11,

27   2012) (dismissing common law claims as preempted by CUTSA where "while stated in various

28   ways, each [claim] alleges in essence that Defendants [misappropriated] . . . proprietary

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\1402350.4                                                       - 16 -
NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH
SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

1   information"); *see also Heller v. Cepia, L.L.C.*, No. 11–cv–01146–JSW, 2012 WL 13572, at *7

2   (N.D. Cal. Jan. 4, 2012) (holding that common law claims premised on "the wrongful taking and

3   use of confidential business and proprietary information, regardless of whether such information

4   constitutes trade secrets, are superceded by the CUTSA"); *Mattel*, 782 F.Supp.2d at 987

5   (C.D. Cal.2011) ("[T]he Court concludes that UTSA supersedes claims based on the

6   misappropriation of confidential information, whether or not that information meets the statutory

7   definition of a trade secret.").  Although a handful of courts have held otherwise, the substantial

8   majority of contrary decisions were either decided before the California Court of Appeals' Silvaco

9   decision or failed to consider Silvaco entirely.  *See SunPower Corp.*, 2012 WL 6160472, at *7

10   (collecting cases).

11        As discussed below, nPP's common law tort claims for conversion and the return of

12   physical property are predicated on the same operative facts giving rise to its allegations of trade

13   secret misappropriation and are therefore subject to its CUTSA claim.  The Third and Fourth

14   Causes of Action are thus preempted by the CUSTA and should be dismissed pursuant to Rule

15   12(b)(6).

16   **1.    nPP Fails to Allege Distinguishing Facts Necessary to Support its
        Conversion Counterclaim**

17

18        The CUTSA preempts nPP's Third Cause of Action for Conversion because the

19   Counterclaim does not identify any tangible or intangible property that is distinguishable from the

20   confidential and proprietary information subject to nPP's trade secret misappropriation claim.

21   The *Silvaco* court made clear that "[i]n order to state a claim for conversion, the plaintiff must

22   identify some property in which he had property rights with which the defendant could, and did,

23   interfere."  *Silvaco*, 184 Cal.App.4th at 238.  However, "[i]f the only arguable property identified

24   in the complaint is a trade secret, and the only basis for any property right is trade secrets law,

25   then a conversion claim predicated on the theft of that property is unquestionably 'based upon

26   misappropriation of a trade secret' . . . and the conversion claim is preempted."  *Id.*

27        The Counterclaim does not allege facts that identify tangible property apart from their

28   alleged trade secrets disclosed pursuant to the terms of the NDAs at issue:

NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH
SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

nPP is the owner of the **confidential and proprietary information** provided to McColloch and Avago Technologies **under the NDA and NDA II** as set forth above. As alleged above, Avago Technologies is in possession of nPP's materials, documents, files, and models **marked confidential and proprietary** and **disclosed under the NDA and NDA II**. nPP is entitled to possession of such withheld **confidential and proprietary property provided under NDA or NDA II.**

\* \* \*

nPP has demanded return of its property by asking for the return of **confidential** materials, documents, files, and models **disclosed under the NDA and NDA II**.

Dkt. No. 23 at ¶¶ 67, 69 (emphasis added).

Allegations that Avago took "materials, documents, files, and models marked confidential and proprietary" alone are insufficient because nPP does not set forth any additional factual allegations distinguishing this "tangible property" from the alleged trade secrets. *See MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1116 (N.D. Cal. 2012). To avoid preemption, nPP **must** allege that these materials have some value "apart from the information contained therein." *Mattel*, 782 F. Supp. 2d at 997. However, nPP sets forth no facts in the Counterclaim concerning what, if any, value these materials have beyond the alleged trade secrets contained therein. nPP's conversation claim therefore remains preempted by the CUTSA.[9] *See Silvaco*, 184 Cal. App. 4th at 238-39; *accord Mattel*, 782 F. Supp. 2d at 996-97; *MedioStream*, 869 F. Supp. 2d at 1116.

Finally, the court in the State Court Action granted Avago's demurrer to the FAC, in part, on the grounds that it was unclear that nPP's conversion claim sought damages based upon the taking of "the documents themselves separate from the trade secret information contained therein." April 1st Order at 10:23-25. Nonetheless, nPP continues to maintain that it "has

---

[9] nPP has previously relied upon *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495 (2013) to support its position. However, this case actually supports Avago's arguments because it recognized that the only time the CUTSA does <u>not</u> displace a conversion claim is when it is based on the taking of "tangible property" **that was not a trade secret**. Since nPP's SAC does not set forth allegations distinguishing the alleged property from its alleged trade secret information, it cannot rely upon this case to save its claims. Likewise, nPP will rely upon on *Loop AI Labs Inc. v. Gatti*, 2015 WL 5158461, at \*3 (N.D. Cal. Sept. 2, 2015). nPP's reliance is misplaced because the property at issue in that case, a work computer, was tangible property having an obvious value apart from any trade secrets that the computer may have also contained.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • PALO ALTO

842\1402350.4
- 18 -
NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

1    suffered and continues to suffer damage by the improper possession, ***use, and publication of its***

2    ***confidential and proprietary property***," without explaining how it has suffered any damages from

3    the conversion of the alleged "materials, documents, files, and models" that are distinct from their

4    value as nPP's alleged trade secrets.  Dkt. No. 23 at ¶ 60 (emphasis added).

5            nPP also prays for "[t]he return to nPP of all nPP materials in the possession of Avago

6    Technologies, including any documents of any kind (including electronic form), files, or models

7    ***that contain or reflect in any way nPP's confidential and proprietary information or trade***

8    ***secrets***."  Dkt. No. 23 at 36:1-3 (emphasis added).  Because the property subject to nPP's

9    conversion counterclaim is entirely predicated on its status as confidential and proprietary

10   information that is subject to its trade secret misappropriation claim, the CUTSA clearly preempts

11   that claim.  Accordingly, the Court should dismiss to nPP's Third Cause of Action.

12           **2.      The CUTSA Preempts Plaintiff's Fourth Cause of Action for Specific**
                       **Recovery of Personal Property**
13

14           nPP's counterclaim for specific recovery of personal property is also preempted by the

15   CUTSA.  As noted above, controlling and instructive authority requires that nPP allege facts that

16   its vaguely identified "tangible property" has some value beyond nPP's alleged trade secrets.  *See*

17   *Silvaco*, 184 Cal. App. 4th at 238-39; *accord Mattel, Inc.*, 782 F. Supp. 2d at 997; *MedioStream*,

18   869 F. Supp. 2d at 1116.

19           However, nPP's Counterclaim does not identify any specific tangible property that has

20   value separate from the alleged trade secrets subject to nPP's CUTSA claim.  Rather, the

21   allegations supporting this claim make clear that the only alleged value of such property is

22   derived from nPP's alleged confidential and proprietary information contained or embodied

23   therein:

24   •   "Avago Technologies is in possession of nPP's materials, documents and,
         files, and models ***marked confidential and proprietary and disclosed under***
25       ***the NDA and NDA II***."

26   •   nPP is entitled to possession of any property rights in such withheld
         information and the '379 Application and the '025 Patent ***confidential and***
27       ***proprietary property provided under NDA I or NDA II***.

28   •   "The ***confidential and proprietary*** physical property taken by Avago
         Technologies generally and ***Avago IP*** in particular is very valuable."

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1402350.4                                                          - 19 -

NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH
SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

Dkt. No. 23 at ¶¶ 72-74 (emphasis added).  None of these allegations differentiate the value these materials apart from the fact that they are allegedly confidential and proprietary to nPP.  As a result, the CUTSA preempts this claim and the Court should therefore sustain this demurrer.

**C.      Plaintiff's Fourth Cause of Action Fails to State a Viable Claim Separate from its Third Cause of Action for Conversion**

nPP's claim for specific recovery of personal property also fails to state a claim because it merely amounts to a remedy for conversion of personal property rather than a standalone cause of action.  In this regard, "the wrongful exercise of dominion over the personal property of another, whether it involves wrongful taking or lawful taking and wrongful withholding, ***constitutes the tort of conversion***.  5 Witkin, Cal. Proc. 5th Plead § 692 (2008) (emphasis added).  It thus follows that "[t]he tort of conversion gives the plaintiff alternative ***remedies*** of recovery of possession or the value of the property taken."  5 Witkin, Cal. Proc. 5th Plead § 702 (2008) (emphasis added); *accord State Farm Mut. Auto. Ins. Co. v. Department of Motor Vehicles*, 53 Cal. App. 4th 1076, 1081-1082 (1997) ("The remedies for conversion include specific recovery of the property, damages, and a quieting of title.").  Unsurprisingly, the allegations in support of the Fourth Cause of Action are nearly identical to those in the Third Cause of Action for Conversion.  The alleged tangible property, and the remedies sought are identical, making this claim a potential remedy for conversion and not a standalone cause of action.  *Compare* Dkt. No. 23 at ¶¶ 66-70 *and* ¶¶ 71-75. The Court should therefore dismiss nPP's claim for specific recovery of personal property for this additional ground.

**D.      nPP's Sixth Cause of Action Relies Upon Alleged Acts of Misappropriation That Occurred Before the Effective Date of the DTSA**

nPP's Sixth Cause of Action asserted pursuant to the DTSA also fails a to state a claim because it relies upon alleged acts of misappropriation occurring well before May 11, 2016, the date that the DTSA went into effect.  The DTSA was enacted on May 11, 2016 and created a private cause of action in favor of the "owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1); Defend Trade Secrets Act of 2016, Pub. L. No. 114-153,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1402350.4

NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

1   130 Stat 376, 376.  However, the DTSA only applies to acts of misappropriation that occur on or

2   after the date of enactment, May 11, 2016.  Defend Trade Secrets Act of 2016, Pub. L. No. 114-

3   153, 130 Stat 376, 382 ("(e) EFFECTIVE DATE.--The amendments made by this section shall

4   apply with respect to any misappropriation of a trade secret . . . *for which any act occurs on or*

5   *after the date of the enactment of this Act*.") (emphasis added).

6          With respect to the '379 Application, the only specific acts of misappropriation alleged by

7   nPP to support its DTSA were taken by Avago on with the application was filed on October 23,

8   2012 and published on April 24, 2014 – years before the enactment of the DTSA.  Dkt. No. 23 at

9   ¶ 44, Exh. C; ¶¶ 80, 84.  While the later date likely constitutes constructive notice, nPP admits

10  that it learned of these acts *in August 2014*. *Id.*, ¶ 47.  As result, any claims that nPP could have

11  based on the '379 Application accrued no later than that date.

12         nPP's alleged confidential and proprietary information purportedly contained in what

13  would become the '025 Patent was allegedly misappropriated via the filing of the underlying

14  application on December 19, 2011 and its publication on June 30, 2013.  Dtk. No. 23 at ¶ 49, Exh.

15  D; ¶¶ 80, 84.  nPP admits that the '360 Patent contains the identical information as the '025

16  Patent. *Id.*, at ¶ 50.  Thus, the information contained therein was already publicly available at the

17  time that the application for the '360 Patent was filed on March 24, 2015 and published on July 9,

18  2015. *See id.*, ¶ 49, Exh. E.  Even if the '360 Patent arguably contained additional information,

19  these dates are well before the enactment of the DTSA.  nPP's admission that learned of the '025

20  Patent and the application that became '360 Patent in February 2016 also establishes that nPP's

21  claims based thereon accrued prior to the enactment of the DTSA.

22         nPP has therefore failed to plead facts asserting a claim upon which relief can be granted

23  under the DTSA.  The Court should therefore dismiss nPP's Sixth Cause of Action for Trade

24  Secret Misappropriation under the DTSA.

25     **E.     The Court Should Deny nPP Leave to Amend with Respect to Its Third,
               Fourth and Sixth Causes of Action.**

26

27         Avago respectfully requests that the Court grant its motion to dismiss nPP's Third and

28  Fourth Causes of Action without leave to amend.  When a party repeatedly fails to cure

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\1402350.4
- 21 -
NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH
SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS

1   deficiencies, the court may order dismissal without leave to amend.  *See Ferdik v. Bonzelet*, 963

2   F.2d 1258, 1261 (9th Cir.1992).  Such is the case here.  nPP had **three** opportunities in the State

3   Court Action to allege facts that would set its conversion and specific recovery of personal

4   property claims apart from its CUTSA claim.  Despite the court in the State Court Action

5   providing explicit guidance as to how nPP could maintain these claims, nPP refused to add

6   allegations that identified the tangible property and the value that such property had apart from

7   nPP's allegedly confidential and proprietary information.  The fact that nPP made no further

8   effort in its Counterclaim to cure such defects makes clear that providing nPP any further

9   opportunity to amend would be futile.  Thus, the Court should grant Avago's motion to dismiss

10  these claims without leave to amend.

11          Avago also submits that the Court should dismiss nPP's Sixth Cause of Action brought

12  pursuant to the DTSA without leave to amend.  While leave to amend may be freely given, courts

13  will not grant leave where further amendment would be futile.  *See Foman v. Davis*, 371 U.S.

14  178, 182 (1962); *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004).  In this

15  regard, the admissions made in nPP's Counterclaim make clear that nPP's trade secret

16  misappropriation claims based on the '379 Application, the '025 Patent, and the'360 Patent **all**

17  accrued prior to May 16, 2016.  Such admissions are fatal to nPP's DTSA claim, and thus the

18  Court should dismiss this claim without leave to amend.

19  **V.      CONCLUSION**

20          For the reasons stated above, Avago respectfully requests that the Court grant its motion

21  to dismiss in its entirety.

22  Date:   November 18, 2016              HOPKINS & CARLEY
                                          A Law Corporation
23
                                          By: */s/ John V. Picone III*
24                                          _____
                                            John V. Picone III
25                                          Jeffrey M. Ratinoff
                                            C. Gideon Korrell
26                                          Attorneys for Plaintiffs
                                            AVAGO TECHNOLOGIES LIMITED, USA,
27                                          AVAGO TECHNOLOGIES U.S. INC., AVAGO
                                            TECHNOLOGIES GENERAL IP (SINGAPORE),
                                            PTE. LTD and LAURENCE MCCOLLOCH
28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\1402350.4                              - 22 -

NOTICE OF MOTION AND MOTION TO DISMISS NANOPRECISION PRODUCTS, INC.'S FIRST THROUGH
SIXTH COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 3:16-CV-03737 JCS