1   VINCENT J. BELUSKO (Bar No. 100282)
    VBelusko@mofo.com
2   GREGORY B. KOLTUN (Bar No. 130454)
    GKoltun@mofo.com
3   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
4   Los Angeles, California 90017-3543
    Telephone: 213.892.5200
5
    MATTHEW I. KREEGER (Bar No. 153793)
6   MKreeger@mofo.com
    MORRISON & FOERSTER LLP
7   425 Market Street
    San Francisco, CA 94105-2482
8   Telephone: 415.268.7000

9   Attorneys for Defendant and Counterclaimant
    NANOPRECISION PRODUCTS, INC. and
10  Counterclaimants MICHAEL K. BARNOSKI,
    ROBERT R. VALLANCE,
11  SHUHE LI, and KING-FU HII

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14              SAN FRANCISCO DIVISION

| | |
|---|---|
| 15  AVAGO TECHNOLOGIES U.S., INC.; AVAGO TECHNOLOGIES GENERAL IP (SINGAPORE), PTE. LTD; and LAURENCE R. MCCOLLOCH, | CASE NO. 3:16-cv-03737 JCS |
| 16 | **DEFENDANT'S AND COUNTERCLAIMANTS' OPPOSITION** |
| 17 | **TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST** |
| 18  Plaintiffs, | **THROUGH SIXTH COUNTERCLAIMS** |
| 19  v. | Hearing Date:   February 3, 2017 |
| 20  NANOPRECISION PRODUCTS, INC., | Time:   9:30 AM Dept:   Courtroom G – 15th Floor |
| 21  Defendant. | Judge:   Hon. Joseph C. Spero Case Filed:   July 1, 2016 |
|     NANOPRECISION PRODUCTS, INC.; MICHAEL K. BARNOSKI; ROBERT R. | Trial Date:   None |
| 22  VALLANCE; SHUHE LI; and KING-FU HII, | |
| 23  Counterclaimants, | |
| 24  v. | |
| 25  AVAGO TECHNOLOGIES LIMITED, USA; AVAGO TECHNOLOGIES U.S., INC.; | |
| 26  AVAGO TECHNOLOGIES GENERAL IP (SINGAPORE), PTE. LTD; and LAURENCE | |
| 27  R. MCCOLLOCH, | |
| 28  Counterdefendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................2

I.      The Parties' Relationship that Gave Rise to This Lawsuit ...............................2

II.     nPP's Action in the Superior Court of California .............................................2

III.    Avago's Federal Action ....................................................................................4

LEGAL STANDARD ..........................................................................................................5

ARGUMENT .......................................................................................................................5

I.      Dismissal or a Stay Under *Colorado River* is Not Appropriate....................5

II.     nPP's Second Counterclaim for Trade Secret Misappropriation Does Not
        Preempt Its Third and Fourth Counterclaims...................................................9

        A.      The CUTSA Does Not Preempt Non-Contractual Remedies That
                Are Not Based on Misappropriation of Trade Secrets...........................9

        B.      nPP's Third and Fourth Counterclaims Are Based on Plaintiffs'
                Wrongful Possession of nPP's Tangible Personal Property
                Independent of nPP's Trade Secret Misappropriation Claim .............10

        C.      The Cases Plaintiffs Cite Do Not Dictate That Preemption Applies
                Here.....................................................................................................13

        D.      nPP Is Not Required to Allege the Value of the Property ..................15

III.    nPP's Fourth Cause of Action States a Separate Viable Claim ......................15

IV.     NPP Adequately Pled a Claim Under The DTSA............................................16

V.      Should the Court Be Inclined to Dismiss Any Claim, Leave to Amend
        Should Be Granted ...........................................................................................19

CONCLUSION ..................................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ackoff-Oretga v. Windswept Pacific,*
  98 F.Supp.2d 530 (S.D.N.Y. 2000) ........................................................................ 9

*Adams Arms, LLC v. Unified Weapon Sys., Inc.,*
  2016 WL 5391394 (M.D. Fl. Sept. 27, 2016) ...................................................... 16, 17

*Ali v. Fasteners for Retail, Inc.,*
  544 F. Supp. 2d 1064 (E.D. Cal. 2008) ............................................................... 10

*Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.,*
  843 F.2d 1253 (9th Cir. 1988) .............................................................................. 9

*American Bankers Mortg. Corp. v. Federal Home Loan Mortg. Corp.,*
  75 F.3d 1401 (9th Cir. 1996) ................................................................................ 15

*Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.,*
  2011 WL 5025178 (S.D. Cal. Oct. 21, 2011) ...................................................... 10

*Angelica Textile Services, Inc. v. Park,*
  220 Cal.App.4th 495 (2013) ...................................................... 3, 10, 11, 12, 15

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................. 5

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................. 5

*Kwikset Corp. v. Superior Court,*
  51 Cal.4th 310 (2011) ......................................................................................... 10

*Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.,*
  318 F. Supp. 2d 216 (D. Del. 2004) .................................................................... 10

*Caruthers v. Hensley,*
  90 Cal. 559 (1891) ............................................................................................... 15

*E-Smart Techs., Inc. v. Drizin,*
  2009 WL 35228 (N.D. Cal. Jan. 5, 2009) ........................................................... 11

*Hebbe v. Pliler,*
  627 F.3d 338 (9th Cir. 2010) ................................................................................ 5

*Heller v. Cepia, LLC,*
  2012 WL 13572 (N.D. Cal. Jan. 4, 2012) ...................................................... 14, 15

*Hullinger v. Anand*,
   2015 WL 11072169 (C.D. Cal. Dec. 22, 2015) ...........................................................11

*Kovesdy v. Kovesdy*,
   2010 WL 3619826 (N.D. Cal. Sept. 13, 2010) ...........................................................11

*Loop AI Labs Inc. v. Gatti*,
   2015 WL 5158461 (N.D. Cal. Sept. 2, 2015) ....................................................3, 11, 12

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000).....................................................................................5

*Martone v. Burgess*,
   2008 WL 3916022 (N.D. Cal. Aug. 25, 2008)...........................................................10

*Melt Franchising, LLC v. PMI Enterprises, Inc. et al.*,
   2008 WL 4811097 (C.D. Cal. Oct. 27, 2008)......................................................6, 7, 8

*PostX Corp. v. Secure Data in Motion, Inc.*,
   2004 WL 2663518 (N.D. Cal. Nov. 20, 2004).............................................................10

*R.R. St. & Co. v. Transp. Ins. Co.*,
   656 F.3d 966 (9th Cir. 2011).........................................................................................6

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011).........................................................................................5

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986).....................................................................................19

*Sciortino v. Pepsico Inc.*,
   108 F.Supp.3d 780 (N.D. Cal. 2015) ...........................................................................8

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal.App.4th 210 (2010) ....................................................................10, 12, 13, 14

*SunPower Corp. v. SolarCity Corp.*,
   2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) .....................................................14, 15

*Tan v. Grubhub*,
   171 F.Supp.3d 998 (N.D. Cal. 2016) ...........................................................................6

*Travelers Indem. Co. v. Madonna*,
   914 F.2d 1364 (9th Cir. 1990)...................................................................................7, 8

*Yale Preston v. Marathon Oil Co.*,
   No. 8-cv-239, slip op. (D. Wy. Mar. 10, 2009).............................................................7

**Statutes**

18 U.S.C. § 1836(b)(1)................................................................................................16, 17

18 U.S.C. § 1839(5)(A)-(B) ..................................................................................16-17, 19

35 U.S.C. §256.............................................................................................................7, 8

Cal. Code of Civ. Proc. § 3426.7(b)(2)...........................................................................9, 10

California Uniform Trade Secret Act................................................................................ *passim*

California Civil Code section 3426, *et seq*....................................................................3, 4

Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, 130 Stat 376, 376....................... *passim*

Uniform Trade Secrets Act, Section 11 ...........................................................................18

**Rules**

Fed. R. Civ. P. 12 ........................................................................................................5

Fed. R. Civ. P. 15(a).....................................................................................................5

1

## INTRODUCTION

2        Short on factual analysis and on the wrong side of the law, Plaintiffs' Motion to Dismiss

3  resorts to misstating the holdings of federal and state cases, accuses nanoPrecision Products, Inc.

4  ("nPP") of forum shopping by virtue of being a defendant in this action, and misrepresents nPP's

5  position on meet and confers held between the parties.  A closer look at the allegations raised by

6  Plaintiffs and the controlling case law leads to only one conclusion: Plaintiffs' Motion relies on

7  fundamental misunderstandings of the law and the facts and should be denied in its entirety.

8        First, a stay or dismissal of nPP's state law counterclaims is not appropriate under

9  *Colorado River* because it would not avoid piecemeal litigation, given the common issues of fact

10  shared by Plaintiffs' inventorship claims and nPP's state law claims.  Moreover, the state court

11  proceedings have not advanced in any significant way, and this Court's exercise of supplemental

12  jurisdiction over nPP's state law counterclaims would provide a single forum to fully resolve the

13  parties' dispute.  Even more significantly, as set forth in the recently filed Joint Case Management

14  Statement, the parties have agreed that, if this Court accepts supplemental jurisdiction over the

15  state law claims, nPP will file a stay motion in the state court proceeding, and Plaintiffs will

16  withdraw their *Colorado River* grounds in the instant motion.  Second, nPP's counterclaims for

17  conversion and specific recovery of personal property are not preempted by the California

18  Uniform Trade Secrets Act ("CUTSA") because they seek recovery in nPP's tangible physical

19  property in which nPP has a property interest independent of whether such property also

20  constitutes a trade secret.  nPP's claim for conversion also states a valid separate claim under

21  California law, and none of the authorities cited by Plaintiffs suggest a contrary finding.  Third,

22  nPP's counterclaim for trade secret misappropriation under the Defend Trade Secrets Act of 2016

23  ("DTSA") properly alleged acts of misappropriation that occurred after the effective date of the

24  DTSA.  Plaintiffs' arguments to the contrary are based on a misunderstanding of the law and

25  ignore a recent federal case that rejected the very same arguments raised by Plaintiffs.

26  Accordingly, the Court should deny Plaintiffs' Motion to Dismiss in its entirety.

27  / / /

28  / / /

**BACKGROUND**

I.   **THE PARTIES' RELATIONSHIP THAT GAVE RISE TO THIS LAWSUIT**

nPP is a leader in complex material forming, particularly using nanoprecision metal stamping to form "benches" for fiber optic communications. Dkt. No. 23 at 20:11-22. nPP and two of the Plaintiffs and Counterdefendants entered into non-disclosure agreements ("NDAs") in July 2010 and May 2012 to facilitate communications regarding the use of nPP's capabilities to precision stamp components for fiber optic applications.[1] Dkt. No. 23 at 22:1-5; 26:14-19. nPP's precision stamping process represented a very substantial improvement over the silicon bench product manufactured by Plaintiffs. Dkt. No. 23 at 22:11-16. At the outset of the parties' discussions, Plaintiffs were not knowledgeable regarding the precision stamping process. Dkt. No. 23 at 22:16-18. Pursuant to the NDAs, nPP provided detailed and sensitive information, materials, documents, files, and models regarding its innovative stamping technology, all toward the goal of entering into some form of further agreement that would allow Plaintiffs and Counterdefendants to use nPP's technology. Dkt. No. 23 at 22:11-26:25. After several years of discussions, however, Plaintiffs and Counterdefendants abruptly and without explanation advised nPP that they were not interested in using nPP's technology. Dkt. No. 23 at 27:2-7. nPP was then shocked to learn that Plaintiffs and Counterdefendants filed three patent applications (U.S. Application Nos. 13/658,379; 13/329,380 and 14/666,427) with the United States Patent and Trademark Office ("USPTO") and secured two issued patents, U.S. Pat. Nos. 9,011,025 ("'025 Patent") and 9,400,360 ("'360 Patent"), which all embodied the key technology that nPP had disclosed to Plaintiffs and Counterdefendants under the NDAs. Dkt. No. 23 at 27:10-11.

II.   **NPP'S ACTION IN THE SUPERIOR COURT OF CALIFORNIA**

nPP initiated an action in the Superior Court of California in Santa Clara County on February 19, 2015 against Plaintiffs and Counterdefendants (the "State Court Action") and filed a

---

[1] Pursuant to the parties' November 10, 2016 stipulation (Dkt. No. 26), Plaintiffs represented that Avago Technologies Limited, USA, is not and never has been an existing corporate entity, and the Avago representative who signed the July 14, 2010 non-disclosure agreement, Ron Kaneshiro, was actually an employee of Avago Technologies U.S., Inc. and acting on its behalf at the time.

1   First Amended Complaint ("FAC") on April 9, 2015, which asserted claims for: (1) breach of

2   written contract; (2) misappropriation of trade secrets in violation of Civil Code section 3426, *et*

3   *seq.*; (3) intentional interference with contractual relations; (4) unfair competition in violation of

4   Business and Professions Code section 17200; (5) conversion; (6) specific recovery of personal

5   property; (7) breach of fiduciary duty; (8) fraud; and (9) declaratory relief.  Plaintiffs and

6   Counterdefendants filed a demurrer to the third through ninth causes of action and moved to

7   strike nPP's FAC on May 11, 2015.  On April 1, 2016, the Superior Court granted the demurrer.

8   *See* Declaration of Nicholas Fung ("Fung Decl."), Ex. A at 6:26-28.

9       With respect to nPP's fifth and sixth causes of action, nPP argued that those claims were

10  not preempted by the CUTSA because they were based on tangible property (e.g., documents,

11  designs, and solid models), in which it has property rights independent of any alleged trade secret.

12  Fung Decl., Ex. A at 9:13-15.  The Court specifically held that "[a] claim for conversion or

13  specific recovery of tangible personal property (as opposed to intangible confidential information)

14  is based on facts independent and distinct from a claim of trade secret misappropriation." Fung

15  Decl., Ex. A at 9:15-23 (citing *Angelica Textile Services, Inc. v. Park*, 220 Cal.App.4th 495, 508

16  (2013); *Loop AI Labs Inc. v. Gatti*, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015)).  The

17  Superior Court determined that nPP's claims for conversion and specific recovery of personal

18  property were preempted because they sought to recover only "'possession of any property rights

19  in [nPP's] *information*,' as opposed to the documents or materials themselves."  Fung Decl., Ex.

20  A at 9:24-28; 10:23-27.  But to the extent nPP's claims for conversion and specific recovery of

21  personal property seeks recovery of damages based on Defendants' "wrongful possession of

22  [nPP's] physical property (i.e., documents) . . . it is based on facts that are independent and

23  distinct from the claim for trade secret misappropriation."  Fung Decl., Ex. A at 10:14-17.

24      During oral argument, nPP indicated that it could amend its claims for conversion and

25  specific recovery of personal property to clarify its possession that these claims were based on the

26  withholding of physical property.  Fung Decl., Ex. A at 10:25-27.  The Superior Court granted

27  nPP leave to amend its complaint.  Fung Decl., Ex. A at 12:14-16.

28      After substantial meet and confer efforts with Plaintiffs' and Counterclaimants' counsel,

nPP filed a Second Amended Complaint ("SAC") to add allegations that address the Superior Court's April 1, 2016 order and add new patent and patent applications.[2]  nPP's SAC asserts five causes of action for (1) breach of written contract; (2) misappropriation of trade secrets in violation of California Civil Code section 3426, *et seq.*; (3) conversion; (4) specific recovery of personal property; and (5) declaratory relief.  Regarding the third and fourth causes of action, nPP alleges that those claims are based on "improperly withheld materials, documents, files, and models" and "physical property taken by" Plaintiffs and Counterdefendants.  Fung Decl., Ex. B at ¶¶ 57-64.  Plaintiffs and Counterdefendants filed a demurrer to the third through fourth causes of action on June 1, 2016.  nPP filed an opposition to the demurrer on October 24, 2016.  The demurrer is set to be heard by the Superior Court on January 27, 2017.

## III.    AVAGO'S FEDERAL ACTION

Plaintiffs initiated the present action on July 1, 2016, asserting a claim for declaratory relief on the issue of inventorship with respect to the '025 Patent.  On or about September 9, 2016, the parties conducted their Rule 26(f) conference.  During that conference, Plaintiffs indicated to nPP their intent to file an amended complaint to add a second claim for declaratory relief on the issue of inventorship with respect to the newly issued '360 Patent.  nPP requested an extension to respond to the amended complaint in order to evaluate the scope of the counterclaims it intends to file, which may include the claims asserted in the state court action.

On September 16, 2016, Plaintiffs filed an amended complaint that asserted a second claim for declaratory relief on the issue of inventorship with respect to the '360 Patent.  Dkt. No. 15.  nPP filed an Answer and Counterclaim on October 17, 2016, asserting as counterclaims the same five state law claims asserted by nPP in the State Court Action as well as trade secret misappropriation under the DTSA.  Dkt. No. 23 at 29:21-33:26.  nPP and Counterclaimants Michael K. Barnoski, Robert R. Vallance, Shuhe Li, and King-Fu Hii also asserted the following two counterclaims: correction of named inventor on the '025 Patent and correction of named

---

[2] nPP repeatedly informed Defendants and the Court both before and during the hearing on the first demurrer that it intended to amend the complaint to add new patent and patent applications to its claims.

1   inventor on the '360 Patent.  Dkt. No. 23 at 34:2-35:23.

2           Contrary to the allegations made by Plaintiffs in its Motion to Dismiss, nPP never agreed

3   that it would dismiss any of its claims in the State Court Action.  Fung Decl., ¶¶ 6-7.  In fact, in a

4   recent conversion held between counsel for Plaintiffs and counsel for nPP on November 1, 2016,

5   counsel for nPP made clear that nPP could not move for a stay of the State Court Action until

6   after this Court exercised supplemental jurisdiction over nPP's state law claims.  Fung Decl., ¶ 7.

7                                   **LEGAL STANDARD**

8           A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.

9   The standard for a Rule 12 motion is low: to survive a motion to dismiss, a complaint "does not

10  need detailed factual allegations."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

11  Instead, a plaintiff need only plead facts sufficient to "raise a right to relief above the speculative

12  level."  *Id.* at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint should have

13  "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face").

14  Moreover, when deciding a motion to dismiss nPP's counterclaims, the Court must accept as true

15  all factual allegations and construe them in the light most favorable to nPP.  *Reese v. BP*

16  *Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011); *Hebbe v. Pliler*, 627 F.3d 338, 340

17  (9th Cir. 2010).  Finally, even if a court should find that an operative claim is lacking in

18  specificity, leave to amend to cure any such deficiencies should be freely granted.  Fed. R. Civ. P.

19  15(a); s*ee also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

20                                      **ARGUMENT**

21  **I.      DISMISSAL OR A STAY UNDER *COLORADO RIVER* IS NOT APPROPRIATE**

22          As an initial matter, the parties agree that this Court may and should exercise

23  supplemental jurisdiction over nPP's state law counterclaims.  Dkt. No. 32 at 10, 18.  The parties

24  also agree that, should this Court agree to exercise supplemental jurisdiction, nPP will move for a

25  stay of the State Court Action and Plaintiffs will withdraw this portion of their motion to dismiss.

26  *Id.*  Regardless of the parties' agreement, a stay of nPP's state law counterclaims would not be

27  appropriate under *Colorado River*.

28          Under the *Colorado River* doctrine, a court may stay or dismiss claims in favor of a

1   parallel state action in the interests of "conservation of judicial resources and comprehensive

2   disposition of litigation." *Tan v. Grubhub*, 171 F.Supp.3d 998, 1013 (N.D. Cal. 2016) (internal

3   quotation marks omitted) (citing *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989)).

4   Such cases are "rare, limited, and exceptional, with only the clearest of justifications supporting

5   abstention." *Id.* at 1014 (internal quotation marks and citation omitted).  In determining whether

6   to stay a case pursuant to *Colorado River*, courts in the Ninth Circuit consider eight factors:

7
8   (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.
9
10

11  *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011).  The decision to stay

12  "does not rest on a mechanical checklist, but on a careful balancing of the important factors as

13  they apply in a given case, with the balance heavily weighted in favor of the exercise of

14  jurisdiction." *Tan v. Grubhub*, 171 F.Supp.3d at 1014 (citing *Moses H. Cone Mem'l Hosp. v.*

15  *Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).  Courts have thus denied a *Colorado River* stay

16  even where a majority of the factors favor abstention.  *Id.*  Here, a consideration of the *Colorado*

17  *River* factors heavily weighs against a dismissal or stay.

18         First, a stay of nPP's state law counterclaims would not avoid piecemeal litigation because

19  both the federal court proceeding and state court proceeding will address factual issues common

20  to the Plaintiffs' claims and nPP's state law counterclaims.  In cases where the state law claims

21  share common issues of fact with the federal claims, courts have found that the desire to avoid

22  piecemeal litigation would not be well-served by a stay of the state law claims.  *See Tan*, 171

23  F.Supp.3d at 1015 (denying stay of state law claims where both the federal court and state court

24  would need to address common factual issues); *Melt Franchising, LLC v. PMI Enterprises, Inc. et*

25  *al.*, 2008 WL 4811097, at *4 (C.D. Cal. Oct. 27, 2008) (denying stay of state law counterclaims

26  where plaintiff's claims and defendants' defenses and counterclaims involved common questions

27  of law and fact).  Here, Plaintiffs' claims and nPP's state law counterclaims share common issues

28  of fact that would need to be addressed by both the federal court and state court regardless if the

state law claims were stayed in this action.  For example, the Plaintiffs' inventorship claims and nPP's trade secret misappropriation and breach of contract counterclaims require a determination as to whether the Plaintiffs developed the technology at issue independently without use of any nPP information.  A stay of nPP's state law counterclaims would not prevent the possibility of inconsistent adjudication of this same factual issue in the State Court Action.

Second, while the State Court Action was filed first, it has not advanced in any significant way, and thus does not support a stay or dismissal of nPP's state law counterclaims.  The Ninth Circuit and Supreme Court have made clear that the order in which the forums obtained jurisdiction should be evaluated "in terms of how much progress has been made in the two actions."  *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990) (internal quotations omitted) (citing *Cone*, 460 U.S. at 21).  Where the state court proceeding has not advanced in any significant way, the mere fact the state court action was filed first does not support a stay or dismissal.  *See Melt Franchising*, 2008 WL 4811097 at *3 (denying stay of state law claims where there was no substantial progress in either the state or federal case and no discovery had been conducted); *Yale Preston v. Marathon Oil Co.*, No. 8-cv-239, slip op. at 19 (D. Wy. Mar. 10, 2009) (denying stay where state court proceedings had not advanced in any significant way).  Here, no discovery has been taken in the State Court Action and the parties have yet to complete full briefing of Avago's Demurrer to nPP's Second Amended Complaint.  Indeed, given the pace of the State Court Action, it is likely that this Court will comprehensively resolve all of the issues in this matter at least as quickly as the State Court Action.

Fourth, contrary to Plaintiffs' unfounded allegations, nPP is not forum shopping.  nPP did not initiate the present suit in federal court, nor could it have at the time, as no patent had issued until ***after*** the filing of the initial state court action and thus there was no federal claim available under 35 U.S.C. §256.  nPP simply asserted counterclaims, including its state law counterclaims from the State Court Action, because these claims arose from a common nucleus of operative facts as Plaintiffs' claims for inventorship.  The present case is thus "unlike the instances of forum shopping . . . in which the same plaintiff abandoned state court cases after lengthy litigation in favor of filing in federal court."  *Tan*, 171 F.Supp.3d at 1016.  Nor is nPP "hoping for

1   a better result" or "seeking a second bite at the apple" (Dkt. No. 29 at 15) by asserting its

2   counterclaims for conversion and specific recovery of personal property.  Plaintiffs' Motion

3   ignores the fact that the Superior Court in the State Court Action explicitly granted nPP leave to

4   amend its complaint to reassert certain of its state law claims, including its claims for conversion

5   and specific recovery of personal property.  Fung Decl., Ex. A at 12:14-16.

6          Fifth, the fact that state law provides the rule of decision on the merits of nPP's state law

7   counterclaims, without more, does not weigh in favor of a stay or dismissal.  It is well established

8   that the "presence of state-law issues may weigh in favor of [abstention] only in some rare

9   circumstances." *Travelers Indem. Co.*, 914 F.2d at 1370 (citing *Cone*, 460 U.S. at 26).  In cases

10  involving routine issues of state law, the district court is fully capable of deciding such issues and

11  there are no such rare circumstances weighing in favor of a dismissal or stay.  *See Travelers*

12  *Indemn. Co.*, 914 F.2d at 1370 (declining stay where the case involved routine issues of state law,

13  such as misrepresentation, breach of fiduciary duty, and breach of contract); *Melt Franchising*,

14  2008 WL 4811097, at *3 (denying stay of state law counterclaims for violations under California

15  statute, fraud, unjust enrichment, and declaratory relief, finding that such claims involved

16  "routine issues of state law that [the federal] Court is fully capable of deciding").  Here, nPP's

17  state law counterclaims similarly raise routine issues of state law that this Court is fully capable

18  of deciding.  Plaintiffs cite to no case law that supports a contrary position.

19         Finally, because the State Court Action cannot resolve all of the parties' claims

20  (specifically inventorship under Section 256 as to the '025 and '360 Patents), this Court's

21  exercise of jurisdiction over nPP's state law counterclaims would provide a single forum to fully

22  resolve the parties' dispute and not only conserve judicial resources but also provide a

23  comprehensive disposition of litigation.  *See Melt Franchising*, 2008 WL 4811097, at *4

24  (denying stay, finding that the "policy favoring conservation of judicial resources and

25  comprehensive disposition of litigation would be furthered by hearing both federal and state law

26  claims together").  Other district courts have declined to dismiss or stay state law claims where

27  the court was the only forum that could fully resolve the parties' dispute.  *See, e.g., Sciortino v.*

28  *Pepsico Inc.*, 108 F.Supp.3d 780, 815-16 (N.D. Cal. 2015) (declining stay where there was

1   "substantial doubt as to whether the state proceedings will resolve the federal action" and finding

2   that "the desire to avoid piecemeal litigation . . . is not well-served in this case by a partial stay");

3   *Ackoff-Oretga v. Windswept Pacific*, 98 F.Supp.2d 530, 538 (S.D.N.Y. 2000) (no dismissal of

4   state law claims where federal court was the only forum that could fully resolve the dispute).

5        The sole case cited by Plaintiffs in support of a stay or dismissal, *Am. Int'l Underwriters,*

6   *(Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253 (9th Cir. 1988) is readily distinguishable.

7   *Am. Int'l Underwriters* involved a ***plaintiff*** in a state court action who filed an ***identical suit*** in

8   federal court after two-and-a-half years of litigation in the state court, alleging the same claims as

9   the state court action.  *Id.* at 1255.  In contrast, here the defendants in the State Court Action, not

10   nPP, filed the present suit in federal court.  In addition, the state court proceeding in *Am. Int'l*

11   *Underwriters* had progressed much further than the federal court proceeding, with both parties

12   already engaged in substantial discovery and with several substantive issues already decided by

13   the state court.  *Id.* at 1255.  Here, the State Court Action has not proceeded beyond a demurrer

14   and neither party has taken discovery, factors that weigh against a stay or dismissal.

## II.    NPP'S SECOND COUNTERCLAIM FOR TRADE SECRET MISAPPROPRIATION DOES NOT PREEMPT ITS THIRD AND FOURTH COUNTERCLAIMS

17        nPP's counterclaims for conversion and specific recovery of personal property are not

18   preempted by the CUTSA because they are based on Plaintiffs' wrongful possession of nPP's

19   tangible personal property that is independent of any misappropriation of trade secrets.  Courts

20   have made clear that such claims based on the recovery of tangible personal property are not

21   preempted by the CUTSA, and the authorities cited by Plaintiffs do not suggest otherwise.

### A.    The CUTSA Does Not Preempt Non-Contractual Remedies That Are Not Based on Misappropriation of Trade Secrets

24        Although the CUTSA preempts common law trade secret misappropriation claims, the

25   statute contains an express preemption savings clause, which mandates that it does not affect "(1)

26   contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil

27   remedies that are ***not based upon misappropriation*** of a trade secret, or (3) criminal remedies,

28   whether or not based upon misappropriation of a trade secret."  Cal. Code of Civ. Proc.

§ 3426.7(b)(2) (emphasis added).  California courts have interpreted this clause to mean that the CUTSA "does not displace noncontract claims that, although related to a trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim." *Angelica Textile Services, Inc. v. Park*, 220 Cal.App.4th 495, 507 (Cal. Ct. App. 2013) (internal citations omitted).  A common law claim is thus not preempted where the alleged wrongdoing "is not based on the existence of a trade secret." *Id*. at 508.  CUTSA preemption also does not apply where a claim is "free of any dependency on trade secrets law." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal.App.4th 210, 242 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011).  The fundamental policy underlying CUTSA preemption is to cull claims that are *entirely redundant* of claims for misappropriation of trade secrets. *See Martone v. Burgess*, 2008 WL 3916022, at *3 (N.D. Cal. Aug. 25, 2008).  In other words, if the claim can proceed even without proving trade secret status, it is not preempted.

CUTSA preemption is *only appropriate* when claims are based "on the identical nucleus of facts as a trade secrets misappropriation claim." *Ali v. Fasteners for Retail, Inc.*, 544 F. Supp. 2d 1064, 1070 (E.D. Cal. 2008).  Where a claim is not based on the same nucleus of facts as the trade secrets claim, there is no preemption. *See Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1034-35 (N.D. Cal. 2005); *Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*, 318 F. Supp. 2d 216, 219-220 (D. Del. 2004) (CUTSA only preempts common law claims that "are based entirely on the same factual allegations that form the basis of its trade secrets claim"). Claims "that rely on additional and different facts or theories of liability than those forming the basis for the trade secret claim are not preempted by the [C]UTSA." *Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.*, 2011 WL 5025178, at *9 (S.D. Cal. Oct. 21, 2011); *see also PostX Corp. v. Secure Data in Motion, Inc*., 2004 WL 2663518, at *3 (N.D. Cal. Nov. 20, 2004) (unfair competition claim not preempted by the CUTSA because it was based on an alternative theory of liability, as well as on additional facts).

**B.      nPP's Third and Fourth Counterclaims Are Based on Plaintiffs' Wrongful Possession of nPP's Tangible Personal Property Independent of nPP's Trade Secret Misappropriation Claim**

nPP's counterclaims for conversion and specific recovery of personal property are not

1    preempted by the CUTSA because they are based on Plaintiffs' wrongful possession of nPP's

2    tangible personal property that is independent of whether that property also comprises a trade

3    secret.  As the Superior Court in the State Court Action made clear, "[a] claim for conversion or

4    specific recovery of tangible personal property (as opposed to intangible confidential information)

5    is based on facts independent and distinct from a claim of trade secret misappropriation."  Fung

6    Decl., Ex. A at 9:15-17 (internal citations omitted).  Other courts have also held that claims based

7    on the taking of tangible property, as opposed to intangible property, are not preempted by the

8    CUTSA because such claims are not dependent on the tangible property also comprising a trade

9    secret.  *See, e.g., Angelica*, 220 Cal.App.4th at 508 (conversion claim against former employee

10    who took documents upon leaving the plaintiff's employ not displaced by the CUTSA where the

11    claim could be based on the taking of tangible property that was not a trade secret); *Loop*, 2015

12    WL 5158461, at *3 ("No reasonable application of CUTSA's savings clause precludes a cause of

13    action based on an employee's alleged theft of a piece of tangible property."); *Hullinger v.*

14    *Anand*, 2015 WL 11072169, at *20-21 (C.D. Cal. Dec. 22, 2015) (conversion claim based on

15    "cash held in various bank accounts, email accounts, emails, programming, software, documents,

16    other papers, patents, and other proprietary assets" not preempted); *Kovesdy v. Kovesdy*, 2010

17    WL 3619826, at *3 (N.D. Cal. Sept. 13, 2010) (conversion claimed based on possession of

18    computer not preempted); *E-Smart Techs., Inc. v. Drizin*, 2009 WL 35228, at *6-7 (N.D. Cal. Jan.

19    5, 2009) (conversion claim based on misappropriation of tangible items not preempted).

20          *Angelica Textile* and *Loop* are particularly instructive, and are consistent with the Superior

21    Court's ruling on Plaintiffs' demurrer to the First Amended Complaint ("FAC") in the State Court

22    Action.  In both *Angelica Textile* and *Loop*, the courts held that a conversion claim based on the

23    theft of "tangible property" was not preempted by the CUTSA.  *Angelica Textile*, 220

24    Cal.App.4th at 508 (claim based on documents that were still tangible property even if they

25    contained no trade secrets); *Loop*, 2015 WL 5158461, at *3 (claim based on theft of a work

26    computer).  Plaintiffs' attempt to distinguish *Angelica Textile* and *Loop* misstates the courts'

27    holdings in both cases.  Plaintiffs allege that *Angelica Textile* "recognized that the only time the

28    CUTSA does <u>not</u> displace a conversion claim is when it is based on the taking of 'tangible

1   property' *that was not a trade secret*." Dkt. No. 29 at 18 n.9 (emphasis in original). There was

2   no such holding in *Angelica Textile*, and Plaintiffs' Motion does not cite to any passage in the

3   court's opinion for support. Instead, in *Angelica Textile*, the court made clear that the conversion

4   claim was not displaced because it had "a basis *independent* of any misappropriation of a trade

5   secret," and there was no requirement that the property at issue not also comprise a trade secret.

6   *See Angelica Textile*, 220 Cal.App.4th at 507 (emphasis added). Indeed, the court in *Angelica*

7   *Textile* observed that claims properly outside the preemptive reach of the CUTSA should result in

8   the same legal consequences *regardless of* the court's adjudication of the question of trade

9   secrets. *See id.* at 507. Similarly, Plaintiffs' allegation that *Loop* involved a work computer that

10  had an "obvious value apart from any trade secrets [it] may have also contained" (Dkt. No. 29 at

11  18 n.9) cites to nothing in the court's opinion for support, which is unsurprising as the court in

12  *Loop* made no reference to the value of the property taken and instead based its decision on the

13  fact that the allegations supporting the conversion claim—the defendant's failure to return her

14  work computer and the files it contained after she was terminated—were different from the

15  allegations supporting the trade secret misappropriation claim. *Loop*, 2015 WL 5158461, at *3.

16      Consistent with the applicable case law, nPP has pleaded facts in its counterclaims to

17  make clear that its claims for conversion and specific recovery are not based on intangible

18  confidential information but instead are based on tangible property, namely "materials,

19  documents, files, and models" wrongfully withheld by Plaintiffs. Dkt. No. 23 at 31:6-32:7.

20  Because nPP's claims explicitly seek damages and recovery based on Defendants' wrongful

21  *possession* of *physical* property that is independent of the allegations concerning Plaintiffs'

22  misappropriation of nPP's intangible trade secret information, such claims are not preempted by

23  the CUTSA. *See Angelica Textile*, 220 Cal.App.4th at 508 ("[B]ecause the asserted claim[s] [are]

24  not based on the existence of a trade secret, [they are] not displaced.") (citing *Silvaco*, 184

25  Cal.App.4th at 241-242)); *Loop*, 2015 WL 5158461, at *3 ("No reasonable application of

26  CUTSA's savings clause precludes a cause of action based on an [] alleged theft of a piece of

27  tangible property." (citing *Angelica Textile*, 220 Cal.App.4th at 508)).

28      nPP's counterclaims are also consistent with the Superior Court's guidance in the State

1    Court Action.  The Superior Court in the State Court Action previously indicated that nPP would

2    need to amend its conversion and specific recovery of personal property claims because they

3    sought to recover "only 'possession of any property rights in [nPP's] *information*,' as opposed to

4    the documents or materials themselves."  Fung Decl., Ex. A at 9:24-28.  The Superior Court

5    specifically noted that it appeared "nPP intended to seek damages based, in part, on Avago IP's

6    wrongful possession of its physical property (i.e. documents)," and that, "[t]o the extent the claim

7    seeks such recovery, it is based on facts that are independent and distinct from the claim for trade

8    secret misappropriation."  Fung Decl., Ex. A at 10:15-17 (internal citation omitted).  nPP's

9    counterclaims for conversion and specific recovery of personal property are based precisely on

10   such wrongful possession of nPP's physical property by Plaintiffs and are thus independent and

11   distinct from nPP's trade secret misappropriation claim.

12              **C.      The Cases Plaintiffs Cite Do Not Dictate That Preemption Applies Here**

13           This case is not *MedioStream, Inc. v. Microsoft Corp*., the primary case on which

14   Plaintiffs rely.  There, the plaintiff's conversion claim was based on "certain documents and data

15   and computer data discs that contain or reference Plaintiff's Trade Secrets and other confidential

16   and proprietary information."  869 F.Supp.2d 1095, 1116 (N.D. Cal. 2012).  The Court held that

17   this claim was preempted (but granted leave to amend) because the plaintiff did "not identify such

18   'property,' nor make any attempt to distinguish it from the trade secret material identified in the

19   FAC."  *Id.*  The Court also noted that "the allegations in the complaint strongly suggest[ed] that

20   all of the property purportedly misappropriated by defendants is included within [plaintiff's]

21   expansive definition of its trade secrets."  *Id.*  "On these pleadings, it is plain that [plaintiff's]

22   conversion claim is 'no more than a restatement of the same operative facts supporting trade

23   secret misappropriation,' and therefore preempted by the CUTSA."  *Id.*  Here, nPP's allegations

24   differ from those in *MedioStream* because nPP's conversion and specific recovery claims are

25   based on Plaintiffs' wrongful possession of tangible property and do not depend on the status of

26   such property as trade secrets and are thus separate from nPP's trade secret misappropriation

27   claim.  Dkt. No. 23 at 31:6-32:7.

28           This case is also not *Silvaco Data Sys. v. Intel Corp*.  There, the Court dismissed a

1  conversion claim where "[n]o interest in 'property' was identified other than one arising under

2  trade secrets law."  184 Cal.App.4th at 236.  "[T]he only property described in the complaint is

3  'the stolen property that belongs to [plaintiff]' that was 'contained' in 'the CSI Software' used by

4  [defendant], and the only property interest that [plaintiff] could have in that software under the

5  facts alleged in the pleadings is a trade secret."  *Id.*  Importantly, the software at issue in *Silvaco*

6  was acquired by the defendant from a third party, CSI.  *Id.* at 215-16.  While the plaintiff alleged

7  that CSI had wrongfully incorporated source code it had stolen from plaintiff in the software and

8  that the defendant, by acquiring the software from CSI, had aided and abetted CSI's violation of

9  an injunction preventing CSI from continuing to use the technology, there were no allegations

10  that the defendant had wrongfully taken the software from the plaintiff.  *Id.* at 215-16.  Thus,

11  unlike the present case, there was no wrongful taking of property by the defendant from the

12  plaintiff in *Silvaco*, and "no attempt [was] made to identify any 'Silvaco property' other than the

13  trade secrets supposed used[.]"  *Id*. at 240.  Thus, in *Silvaco*, the "only property interest that [the

14  plaintiff] could have in the software under the facts alleged in the pleadings is a trade secret."  *Id*.

15  at 236.  Here, nPP identifies property other than those based on its trade secrets alone.  (Dkt. No.

16  23 at 31:6-32:7)  Because nPP's conversion and specific recovery claims are based on a separate

17  interest in its physical property, in which nPP has property rights independent of any alleged trade

18  secrets, these claims are not preempted by the CUTSA.

19      *Mattel, Inc. v. MGA Entertainment, Inc.*, although cited by Plaintiffs, supports nPP's

20  argument that its claims survive preemption.  There, the court addressed Mattel's conversion

21  claim on a motion for summary judgment.  782 F.Supp.2d 911, 940 (C.D. Cal. 2011).  And,

22  notably, the defendant "concede[d] that the counter-claim [for conversion] is not superseded to

23  the extent it is based on the misappropriation of 'tangible documents and things.'"  *Id*. at 997.

24  The Court agreed and held that "the conversion counter-claim survives to the extent predicated

25  upon [defendant's] exercise of dominion over the physical [] works."  *Id*.  Here, nPP's conversion

26  claims are based on tangible, physical items and should also survive preemption.

27      Finally, *SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012)

28  and *Heller v. Cepia, LLC*, 2012 WL 13572 (N.D. Cal. Jan. 4, 2012), cited by Plaintiffs for

support, both involved allegations concerning the wrongful taking of intangible information, not tangible physical property.  *See SunPower Corp.*, 2012 WL 6160472, at *4 (claims relate to the "misappropriation of SunPower's non-trade secret proprietary information"); *Heller*, 2012 WL 13572, at *7 (property at issue was plaintiff's "confidential information which is not a trade secret").  In contrast, nPP's counterclaims here allege the wrongful possession of tangible personal property, including materials, documents, files, and models.  Dkt. No. 23 at 31:6-32:7.

### D.    nPP Is Not Required to Allege the Value of the Property

Claims for conversion and specific recovery of personal property do not require a plaintiff to plead the value of the property.  It defies logic to argue that stolen property need not be returned because it has no value.  In any event, whether or not the tangible property that is the subject of nPP's claims has any value apart from the information contained in it should not be an issue at the pleading stage.  Indeed, even if it is later determined that the property has little value, defendants' possession of the property alone is enough to support nPP's claims.  *See Angelica Textile*, 220 Cal.App.4th at 499 ("Although the documents may have little if any value in light of the jury's finding defendants did not appropriate any trade secrets, the defendant employee's possession of them will support a conversion claim independent of any trade secret.").

Plaintiffs cite to *Mattel* for the proposition that nPP must allege some separate value.  This citation is not persuasive.  First, *Mattel* was decided on a motion for summary judgment, not during the pleadings phase.  *Mattel*, 782 F.Supp.2d at 940.  Second, the quoted portion Plaintiffs cite to in *Mattel* relies on Illinois (not California) law.  *Id.* at 997 (citing *Thomas & Betts Corp. v. Panduit Corp.*, 108 F.Supp.2d 968, 973 (N.D. Ill. 2000)).  Plaintiffs can cite to no California law that requires nPP to allege the value of its property at the pleadings phase.

### III.    NPP'S FOURTH CAUSE OF ACTION STATES A SEPARATE VIABLE CLAIM

Plaintiffs allegation that nPP's claim for specific recovery of personal property "merely amounts to a remedy for conversion" (Dkt. No. 29, at 20) misstates the law.  While specific recovery of personal property can be a remedy for conversion, it is also a separate cause of action. *See, e.g., Caruthers v. Hensley*, 90 Cal. 559, 560 (1891); *see also American Bankers Mortg. Corp. v. Federal Home Loan Mortg. Corp.*, 75 F.3d 1401, 1405 (9th Cir. 1996) (asserting counterclaims

1  for conversion and specific recovery of personal property under CA law).  None of the authorities

2  cited by Avago in its motion stand for the proposition that specific recovery of personal property

3  is **only** a potential remedy for conversion and cannot exist as a separate claim.

4  **IV.    NPP ADEQUATELY PLED A CLAIM UNDER THE DTSA**

5       nPP adequately alleged the wrongful use of its trade secrets by Plaintiffs that is necessary

6  to support a claim of misappropriation under the DTSA.  The DTSA creates a private cause of

7  action in favor of the "owner of a trade secret that is misappropriated . . . if the trade secret is

8  related to a product or service used in, or intended for use in, interstate or foreign commerce."  18

9  U.S.C. § 1836(b)(1); Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, 130 Stat 376, 376.

10  Section 2(e) of the DTSA specifies that the DTSA applies to "any misappropriation of a trade

11  secret . . . for which any act occurs on or after the date of the enactment of this Act."  Pub. L. No.

12  114-153, § 2(e).  Under the DTSA, the prohibited acts of misappropriation include both the

13  "acquisition of a trade secret of another" and "***disclosure or use*** of a trade secret of another

14  without express or implied consent."  18 U.S.C. § 1839(5)(A)-(B) (emphasis added).

15       At least one court has held that a partial recovery is available for acts of misappropriation

16  that occur after the effective date of the DTSA even if the original wrongful acquisition of the

17  trade secret occurred prior to the effective date of the DTSA.  In *Adams Arms, LLC v. Unified*

18  *Weapon Sys., Inc.*, 2016 WL 5391394 (M.D. Fl. Sept. 27, 2016), the defendant moved to dismiss

19  the plaintiff's claim under the DTSA, arguing that the complaint at most alleged a wrongful

20  acquisition of trade secrets prior to the effective date of the DTSA.  *Id.* at *6.  The court rejected

21  this argument, finding that the plaintiff "may state a plausible claim for relief, if [the plaintiff]

22  sufficiently alleges a prohibited 'act' occurring after May 11, 2016," and held that the plaintiff

23  was entitled to proceed on a theory that the defendant wrongfully disclosed the plaintiff's trade

24  secrets after May 11, 2016, even though the acquisition of the trade secrets may have occurred

25  prior to the effective date of the DTSA.  *Id.*

26       Plaintiffs appear to take the position that the DTSA does not permit recovery for trade

27  secret misappropriation that began prior to the effective date of the DTSA and allege that, with

28  respect to the '379 Application, "any claims that nPP could have based on the '379 Application

1   accrued no later than" August 2014, when nPP learned of these acts (Dkt. No. 29 at 21), and that,

2   with respect to the '360 Patent, nPP's claims accrued prior to the enactment of the DTSA.

3   Plaintiffs' argument misstates the law.  As explained by the court in *Adams Arms*, the DTSA

4   permits recovery for any ***wrongful acts of misappropriation*** that occur after May 11, 2016,

5   including wrongful ***use and disclosure*** of trade secrets, ***even if the acquisition of the trade secret***

6   ***occurred prior to*** May 11, 2016.  *See Adams Arms,* 2016 WL 5391394, at *6.  While the DTSA's

7   statute of limitations provision provides that an action must be commenced within three years of

8   the date on which the misappropriation was discovered and that a "continuing misappropriation

9   constitutes a single claim of misappropriation" for purposes of the statute-of-limitations

10   provision, *see Adams Arms*, 2016 WL 5391394, at **5-6 (citing 18 U.S.C. § 1836(d)), the statute

11   explicitly limits this language "for purposes of this subsection," which only addresses when a

12   claim accrues for statute of limitations purposes.  *Id.* at *6.  This "continuing misappropriation"

13   language is not present in Section 2(e) of the DTSA, which defines the prohibited acts of

14   misappropriation and requires such acts to occur after the effective date of the DTSA.  *Id.* at *6;

15   *see also* Pub. L. No. 114-153, § 2(e).  In addition, as observed by the court in *Adams Arms*, the

16   DTSA omitted language from Section 11 of the Uniform Trade Secrets Act that does not allow

17   for recovery for a continuing misappropriation that began prior to the effective date.  *Adams*

18   *Arms*, 2016 WL 5391394, at *6; *see also* Pub. L. No. 114-153, § 2(e).  The DTSA thus makes

19   clear that recovery is available for acts of misappropriation that occur after the effective date of

20   the DTSA, even if the misappropriation began prior to the effective date.

21          Consistent with the language of the DTSA and the court's holding in *Adams Arms*, nPP

22   has more than adequately alleged wrongful misappropriation of its trade secrets after the May 11,

23   2016 effective date of the DTSA—specifically, Plaintiffs' wrongful use and disclosure of nPP's

24   trade secrets in Plaintiffs' prosecution of U.S. Application No. 13/658,379 ("'379 Application")

25   and U.S. Patent No. 9,400,360 ("'360 Patent").  With respect to the '379 Application, nPP's

26   counterclaim alleges that Plaintiffs wrongfully used and disclosed nPP's confidential and

27   proprietary information by continuing to prosecution the '379 Application at the PTO, including

28   by filing an Appeal Brief on July 5, 2016, that requested the Board to reverse the Examiner's

1    rejection of claims.  Dkt. No. 23 at 28:5-15, 33:9-16.  This continued prosecution evidences

2    further misappropriation, disclosure, and use of nPP confidential and proprietary information by

3    Plaintiffs and Counterdefendants after the May 11, 2016 effective date of the DTSA.  The

4    publically available Appeal Brief, filed after the effective date of the DTSA, discloses concepts

5    developed by nPP and provided to Plaintiffs and Counterdefendants under the NDA, which were

6    clearly marked and identified as confidential and proprietary to nPP, including a stamped bench

7    with a curved mirror or a flat mirror, a fiducial for a pick-and-place operations with visual

8    alignment, gussets for structural integrity of the mirror surface, pockets for locating a ball lens,

9    and pockets with alignment edges for accurately locating electro-optical chips, such as edge-

10   emitting lasers or photodiodes.  Dkt. No. 23 at 28:5-15.  Tellingly, Plaintiffs ignore the July 5,

11   2016 filing of the Appeal Brief and incorrectly allege that the "only specific acts of

12   misappropriation alleged by nPP" with respect to the '379 Application are the Oct. 23, 2012 filing

13   of the application and its publication on April 24, 2014."  Dkt. No. 29, at 21.  As explained above,

14   nPP's counterclaim provides a detailed explanation of the specific acts of wrongful use and

15   disclosure of nPP's confidential and proprietary information after the effective date of the DTSA.

16           With respect to the '360 Patent, nPP's counterclaim alleges that Plaintiffs and

17   Counterdefendants wrongfully caused the '360 Patent to issue and publish on July 26, 2016, after

18   the effective date of the DTSA.  Dkt. No. 23 at 33:9-16.  Plaintiffs' allegation that the information

19   contained in the '360 Patent was identical to the '025 Patent and thus already publicly available at

20   the time the application for the '360 Patent was filed ignores the fact that the claims of the '360

21   Patent are different from the '025 Patent and thus constitute additional information that was

22   disclosed when the '360 Patent was issued and published.[3]  Plaintiffs also ignore the July 26,

23   2016 issue date of the '360 Patent and instead allege that the '360 Patent "became" the '360

24   Patent in February 2016.  Dkt. No. 29, at 21.  As shown on the face of the '360 Patent, the

25   _____

26   [3] Plaintiffs' suggestion that the wrongful disclosure of nPP's trade secrets does not constitute an
     act of misappropriation so long as the same trade secrets were wrongfully disclosed before runs
27   contrary to the plain text of the DTSA, which does not distinguish between trade secrets that have
     already been wrongfully disclosed and those that have not.

28

1   February 2016 is incorrect as the '360 Patent issued on July 26, 2016.  While the '360 Patent may

2   have received a notification of allowance earlier than the July 26, 2016 issue date, this does not

3   change the fact that the patent issued and published after the effective date of the DTSA and

4   constitutes an act of misappropriation under the plain language of the DTSA.  *See* 18 U.S.C. §§

5   1839(5)(A)-(B).

6   **V.      SHOULD THE COURT BE INCLINED TO DISMISS ANY CLAIM, LEAVE TO**

7   **AMEND SHOULD BE GRANTED**

8         When a complaint is dismissed for failure to state a claim, "leave to amend should be

9   granted unless the court determines that the allegation of other facts consistent with the

10  challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well*

11  *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  With respect to nPP's counterclaims for

12  conversion and specific recovery of personal property, Plaintiffs are incorrect that "nPP had three

13  opportunities in the State Court Action to allege facts that would set its conversion and specific

14  recovery of personal property claims apart from its CUTSA claim," (Dkt. No. 29, at 26), as the

15  Superior Court in the State Court Action has only had one occasion to address the sufficiency of

16  nPP's counterclaims.  While nPP believes it has adequately pleaded these claims, should the

17  Court, consequently, believe that further detail is required, nPP requests that leave to amend be

18  granted, and that nPP be given the opportunity to provide additional factual details concerning its

19  claims based on the documents themselves separate from any trade secret information contained

20  therein or allege the value of its physical property.

21        With respect to nPP's counterclaim for trade secret misappropriation under the DTSA,

22  nPP believes it has adequately pleaded facts showing acts of misappropriation by Plaintiffs after

23  the effective date of the DTSA.  However, should the Court believe that further detail is required,

24  nPP requests that it be given the opportunity to provide additional factual details concerning

25  Plaintiffs' wrongful use and disclosure of nPP's trade secrets after the effective date of the DTSA.

26                                  **CONCLUSION**

27        Plaintiffs' Motion to Dismiss misrepresents the facts and misstates the law.  With respect

28  to Plaintiffs' request to dismiss or stay nPP's state law counterclaims, the parties have agreed that

1    this Court may and should exercise supplemental jurisdiction over the state law counterclaims.

2    The parties have also agreed that, should this Court agree to exercise supplemental jurisdiction,

3    nPP will move for a stay of the State Court Action and Plaintiffs will withdraw this portion of

4    their motion to dismiss.  Regardless of the parties' agreement, a stay of nPP's state law

5    counterclaims would not be appropriate under *Colorado River* because it would not avoid

6    piecemeal litigation, given the common issues of fact shared by Plaintiffs' inventorship claims

7    and nPP's state law claims.  Moreover, the state court proceedings have not advanced in any

8    significant way, and this Court's exercise of supplemental jurisdiction over nPP's state law

9    counterclaims would provide a single forum to fully resolve the parties' dispute.  With respect to

10    Plaintiffs' request to dismiss nPP's counterclaims for conversion and specific recovery of

11    personal property, these claims are not preempted by the CUTSA because they seek recovery in

12    nPP's tangible physical property in which nPP has a property interest independent of whether

13    such property also constitutes a trade secret.  nPP's claim for conversion also states a valid

14    separate claim under California law, and none of the authorities cited by Plaintiffs suggest a

15    contrary finding.  With respect to Plaintiffs' allegations concerning nPP's counterclaim for trade

16    secret misappropriation under the DTSA, Plaintiffs' arguments are based on a misunderstanding

17    of the law and ignore the numerous examples provided by nPP in its Answer and Counterclaim of

18    Plaintiffs' wrongful acts of misappropriation occurring after the effective date of the DTSA.  nPP

19    therefore respectfully urges the Court to deny Plaintiffs' Motion.

20

21    Dated: December 2, 2016            MORRISON & FOERSTER LLP

22

23                        By: */s/ Vincent J. Belusko*
                            Vincent J. Belusko
                            Gregory B. Koltun

24                             Matthew I. Kreeger

25                             Attorneys for Defendant and Counterclaimant
                            NANOPRECISION PRODUCTS, INC. and

26                             Counterclaimants MICHAEL K. BARNOSKI,
                            ROBERT R. VALLANCE, SHUHE LI, and

27                             KING-FU HII

28