John V. Picone III (State Bar No. 187226)
Jeffrey M. Ratinoff (State Bar No. 197241)
C. Gideon Korrell (State Bar No. 284890)
HOPKINS & CARLEY
70 S First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:     (408) 286-9800
Facsimile:      (408) 998-4790

Attorneys for Plaintiffs
AVAGO TECHNOLOGIES U.S. INC.,
AVAGO TECHNOLOGIES GENERAL IP
(SINGAPORE), PTE. LTD and LAURENCE
MCCOLLOCH

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| AVAGO TECHNOLOGIES U.S., INC., a Delaware corporation; AVAGO TECHNOLOGIES GENERAL IP (SINGAPORE), PTE. LTD, a Singapore corporation,; LAURENCE R. MCCOLLOCH, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> NANOPRECISION PRODUCTS, INC.,  a Delaware corporation, <br><br> Defendant. | CASE NO. 3:16-cv-03737 JCS <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS** <br><br> Hearing Date:   February 3, 2017 <br> Time:   9:30 a.m. <br> Dept:   Courtroom G - 15th Floor <br> Judge:   Hon. Joseph C. Spero <br> Case Filed:   July 7, 2016 <br> Trial Date:   None |
| NANOPRECISION PRODUCTS, INC.; MICHAEL K. BARNOSKI; ROBERT R. VALLANCE; SHUHE LI; and KING-FU HII, <br><br> Counterclaimants, <br><br> v. <br><br> AVAGO TECHNOLOGIES LIMITED, USA; AVAGO TECHNOLOGIES U.S., INC.; AVAGO TECHNOLOGIES GENERAL IP (SINGAPORE), PTE. LTD.; and LAURENCE R. MCCOLLOCH, <br><br> Counter-Defendants. | |

842\1409766.8

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH
COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................................. 1

II.   LEGAL ARGUMENT ......................................................................................................... 2

    A.   nPP's Third and Fourth Causes of Action Identify No "Tangible Property" Beyond the Alleged Trade Secrets Embodied in its "Materials, Documents, Files, and Models" ....................................................................................................... 2

    B.   nPP Misapprehends Relevant Case Law Concerning the CUSTA's Preemption of Common Law Conversion Claims .................................................... 4

    C.   The Counterclaim Fails to Allege Any Acts of Trade Secret Misappropriation that Occurred After the DTSA's Effective Date of May 11, 2016 ................................................................................................................ 7

    D.   *Adams Arms, LLC v. Unified Weapon Sys., Inc.* Cannot Save nPP's DTSA Claim Under the Facts Alleged in the Counterclaim ............................................ 11

    E.   Dismissal (or Stay) of nPP's First through Fifth Causes of Action is Necessary to Curtail nPP's Attempt to Further Game the Judicial Process.......... 12

    F.   The Court Should Deny nPP Leave to Amend its Fourth Through Sixth Causes of Action ...................................................................................................... 14

III.  CONCLUSION ................................................................................................................... 15

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8

- i -

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams Arms, LLC v. Unified Weapon Sys., Inc.*,
2016 WL 5391394 (M.D. Fl. Sept. 27, 2016) ........................................................................ 11

*Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*,
843 F.2d 1253 (9th Cir. 1988) ..................................................................................... 12, 13

*Angelica Textile Servs., Inc. v. Park*,
220 Cal. App. 4th 495 (2013) ....................................................................................... 1, 6

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) .......................................................................................... 2, 12, 13

*DVD Copy Control Ass'n, Inc. v. Bunner*,
31 Cal.4th 864 (2003), *as modified* (Oct. 15, 2003) ............................................................ 11

*Forcier v. Microsoft Corp.*,
123 F.Supp.2d 520 (N.D.Cal. 2000) ................................................................................. 9

*Loop AI Labs Inc. v. Gatti*,
2015 WL 5158461 (N.D. Cal. Sept. 2, 2015) ..................................................................... 1, 6

*Mattel, Inc. v. MGA Entm't, Inc.*,
782 F. Supp. 2d 911 (C.D.Cal. 2011) ............................................................................ 3, 4, 5

*MedioStream, Inc. v. Microsoft Corp.*,
869 F.Supp.2d 1095 (N.D. Cal. 2012) ............................................................................ 4, 5

*Melt Franchising, LLC v. PMI Enterprises, Inc.*,
2008 WL 4811097 (C.D. Cal. Oct. 27, 2008) ...................................................................... 13

*Nakash v. Marciano,*
882 F.2d 1411 (9th Cir. 1989) ......................................................................................... 13

*Schneider v. California Dept. of Corrections*,
151 F.3d 1194 (9th Cir. 1998) .......................................................................................... 7

*Silvaco Data Sys. v. Intel Corp.*,
184 Cal. App. 4th 210 (6th Dist. 2010) ........................................................................ 3, 4, 5, 6

*Simic-Glavaski v. Lifeware Technologies, Inc.*,
No. 1:07CV2718, 2008 WL 423414 (N.D. Ohio Feb. 14, 2008) ............................................. 11

*Tan v. GrubHub, Inc.*,
171 F. Supp. 3d 998 (N.D. Cal. 2016) .......................................................................... 12, 13

*Thomas & Betts Corp. v. Panduit Corp.*,
108 F. Supp. 2d 968 (N.D. Ill. 2000) .............................................................................. 3, 4

*TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*,
No. CV 15-07595-AB (EX), 2016 WL 3475322 (C.D. Cal. Jan. 29, 2016) ................................. 6

*Travelers Indem. Co. v. Madonna*,
914 F.2d 1364 (1990) ................................................................................................... 12

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
587 F.3d 1339 (Fed. Cir. 2009) ................................................................................... 9, 11

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8

- ii -

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Univ. of Rochester v. G.D. Searle & Co.*,
  358 F.3d 916 (Fed. Cir. 2004) ................................................................................ 10

*Western Mining Counsel v. Watt*,
  643 F.2d 618 (9th Cir. 1981) .................................................................................... 7

**STATUTES**

18 U.S.C.A. § 1839(3) ................................................................................................ 9

35 U.S.C. § 112(a) .................................................................................................... 10

35 U.S.C. § 256 .......................................................................................................... 2

37 C.F.R. § 42.405(a) ................................................................................................. 9

**OTHER AUTHORITIES**

California Uniform Trade Secrets Act ("CUTSA") ............................................... *passim*

Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, 130 Stat 376 ("DTSA") .............. *passim*

H. Rept. 114-529 (April 26, 2016) ........................................................................... 8

S. Rept. 114-220 (March 7, 2016) ............................................................................ 8

**RULES**

Rules of Court, Rule 12(b)(6) ................................................................................... 7

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8                        - iii -

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH
COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

## I.    INTRODUCTION

The delicate dance performed in the Opposition filed by Defendant and Counterclaimants nanoPrecision Products, Inc., Michael K. Barnoski; Robert R. Vallance; Shuhe Li; and King-Fu Hii (collectively "nPP" or "Counterclaimants") reconfirms that nPP is simply unable to plead claims for conversion and specific recovery using facts that are independent and distinct from its claim for trade secret misappropriation pursuant to the California Uniform Trade Secrets Act ("CUTSA").  The law is clear: a party cannot bring both CUTSA and common law causes of action based on the same set of facts.  Not only has nPP plead the same facts in its CUTSA claim as it has in its claims for conversion and specific recovery, but nPP has also incorporated the entirety of its CUTSA claim into these other causes of action.  nPP's dissonance is made apparent by how its counterclaims interchangeably refer to the items embodying the alleged trade secrets as "confidential and proprietary information" and "confidential and proprietary property."  Yet, the most compelling evidence supporting preemption is that nPP only seeks to recover damages and the return of its property that constitutes its alleged confidential and proprietary information, saying nothing about any other tangible property.  The majority of courts addressing similar allegations have correctly found such claims to be preempted by the CUTSA.

Ignoring the necessary effect of its own allegations, nPP relies on two outlier cases, *Angelica Textile Servs., Inc. v. Park* and *Loop AI Labs Inc. v. Gatti*.  Neither case saves nPP's claims.  Contrary to nPP, *Angelica* does not stand for the proposition that alleging the existence of tangible property that happens to contain alleged trade secrets automatically confers a separate property right that cannot be preempted.  Likewise, *Loop AI Labs* is distinguishable from the present case because, unlike the plaintiff in that case, nPP fails to identify any tangible property that has value apart from the trade secrets allegedly embodied therein.  Accordingly, the Court should dismiss nPP's conversion and specific recovery of personal property claims as preempted by the CUTSA.

nPP's Defend Trade Secrets Act ("DTSA") claim is also fundamentally flawed, but for a different reason: nPP fails to identify any act of misappropriation by Plaintiffs and Counter-Defendants Avago Technologies U.S., Inc., Avago Technologies General IP (Singapore), PTE,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

Ltd., and Laurence McColloch (collectively "Avago") in relation to the prosecution of U.S. Patent Application 13/658,379 ("the '379 Application") and U.S. Patent No. 9,400,360 ("the '360 Patent"). Not only was the alleged trade secret information in these disclosures contained in previous publications by the USPTO, but nPP voluntarily disclosed its purported trade secrets through its own patent application. Because nPP alleges no acts of misappropriation taking place after the effective date of the DTSA, the Court should dismiss nPP's DTSA claim.

Finally, nPP does not deny that the First through Fifth Causes of Action in the Counterclaim are carbon copies of the claims nPP asserts against Avago in the State Court Action. nPP concedes that this Court's exercise of supplemental jurisdiction over nPP's state law counterclaims would provide a single forum to fully resolve the parties' dispute. Nonetheless, nPP argues that absent the Court doing so and nPP obtaining a stay of the State Court Action, that it should be able to litigate the same claims in parallel state and federal actions. This is the exact type of forum shopping, risk of duplicative efforts and threat of inconsistent ruling that the *Colorado River* doctrine is meant to prevent. Thus, unless and until this Court accepts supplemental jurisdiction over the state law claims ***and*** nPP obtains a stay of the State Court Action, this Court should, at minimum, stay nPP's state law claims asserted in the Counterclaim.

## II.    LEGAL ARGUMENT

### A.    nPP's Third and Fourth Causes of Action Identify No "Tangible Property" Beyond the Alleged Trade Secrets Embodied in its "Materials, Documents, Files, and Models"

nPP argues that Third Cause of Action for Conversion and Forth Cause of Action for Specific Recovery of Personal Property are not preempted by the CUTSA because they are based on "tangible personal property that is independent of whether that property also comprises a trade secret." Opp., Dkt. No. 34 at 11:1-3. nPP then provides a lengthy discussion of the State Court Action before cherry picking a single allegation that the "tangible property" subject to these claims is "materials, documents, files, and models." *Id.* at 12:16-19. When such allegations are placed in the entire context of nPP's assertions, however, it is clear that the Counterclaim fails to allege essential facts setting apart the tangible property subject to those claims from the confidential and proprietary information subject to nPP's CUTSA claim. Indeed, nPP repeatedly

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8                                                    - 2 -
REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

describes such "materials, documents, files, and models" as its confidential and proprietary information without distinction.

For its conversion claim, nPP "realleges and incorporates herein by reference" *all* of the proceeding paragraphs in the Counterclaim, including its CUTSA claim and the confidential and proprietary information subject thereto. Answer and Counterclaim, Dkt. No. 23 at 31:6. nPP then alleges that

> nPP is *the owner of the confidential and proprietary information* provided to McColloch and Avago Technologies under the NDA and NDA II as set forth above. As alleged above, Avago Technologies is in possession of nPP's materials, documents, files, and models *marked confidential and proprietary* and disclosed under the NDA and NDA II. nPP is entitled to possession of *such withheld confidential and proprietary property* . . . ."

*Id.* at 31:7-12 (emphasis added). However, nPP alleges no facts within the four corners of the Counterclaim differentiating its confidential and proprietary information from this "tangible property." nPP finally alleges that it "has suffered and continues to suffer damage by the improper possession, use, and publication of its *confidential and proprietary property*." *Id.* at 31:18-19. Because nPP's conversion claim appears to seek damages and recovery based on Avago's wrongful possession of the same confidential and proprietary property subject to its trade secret claims, nPP's conversion claim is necessarily preempted by the CUTSA. *See Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 238 (6th Dist. 2010) ("[i]f the only arguable property identified in the complaint is a trade secret . . . then a conversion claim predicated on the theft of that property is unquestionably 'based upon misappropriation of a trade secret' . . . and the conversion claim is preempted."); *see also Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 996-97 (C.D.Cal. 2011) (a conversion claim is preempted where the physical property allegedly converted has no value apart from the confidential information contained or embodied therein); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 973 (N.D. Ill. 2000) (holding conversion claim was preempted under Illinois's Uniform Trade Secrets Act because, although the plaintiff argued its claim was based on "the taking of the actual computers, disks, and paper," the court held that "these physical items have little value apart from the information contained therein," thus making the claim based on misappropriation of trade secrets preempted despite

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8                                                                    - 3 -
REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

focusing on tangible property items).

nPP's Fourth Cause of Action for Specific Recovery of Personal Property suffers from the same defects.  nPP again incorporates its CUTSA claim by reference and alleges ownership of the same confidential and proprietary information subject to that claim.  Opp., Dkt. No. 34 at 31:22.  nPP also asserts identical allegations that:

> nPP is ***the owner of the confidential and proprietary information*** provided to McColloch and Avago Technologies under the NDA and NDA II as set forth above.  As alleged above, Avago Technologies is in possession of nPP's materials, documents, files, and models ***marked confidential and proprietary*** and disclosed under the NDA and NDA II.  nPP is entitled to possession of ***such withheld confidential and proprietary property*** . . . ."

*Id.* at 31:23-28 (emphasis added).  nPP then ascribes a vague sense of value to such property based solely on the fact that that it is confidential and proprietary to nPP.  *See id.* at 32:4-5 ("confidential and proprietary physical property taken . . . is very valuable").  However, nPP fails to recognize that this claim only seeks the return of nPP's ***information***.  Answer and Counterclaim, Dkt. No. 23 at 36:1-3 ("The return to nPP of all nPP materials in the possession of Avago Technologies, including any documents of any kind (including electronic form), files, or models ***that contain or reflect in any way nPP's confidential and proprietary information or trade secrets***.") (emphasis added).  Because nPP seeks the return of information only, this claim is preempted by the CUTSA.  *See Silvaco*, 184 Cal. App. 4th at 238-39; *accord Mattel*, 782 F. Supp. 2d at 997; *Thomas & Betts*, 108 F. Supp. 2d at 973.

### B.      nPP Misapprehends Relevant Case Law Concerning the CUSTA's Preemption of Common Law Conversion Claims

nPP unsuccessfully attempts to distinguish several cases cited by Avago that necessitate the preemption of its counterclaims for conversion and specific recovery of personal property.  Contrary to nPP's assertions, this case is indeed analogous to *MedioStream, Inc. v. Microsoft Corp.*, 869 F.Supp.2d 1095 (N.D. Cal. 2012).  MedioStream's conversion claim was based on "certain documents and data and computer data discs that contain or reference Plaintiff's Trade Secrets and other confidential and proprietary information."  *Id.* at 1116.  Just as the plaintiff in *MedioStream* failed to identify anything other than media containing the trade secret information,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8                                   - 4 -
REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

nPP has failed to distinguish the "materials, documents, files, and models" at issue from the alleged trade secrets embodied therein, but also does not "make any attempt to distinguish it from the trade secret material identified in the [Counterclaim]." *Id*. As detailed above, the totality of the allegations supporting nPP's conversion and specific recovery claims make clear that they are based solely on their value as trade secrets. nPP's failed arguments are further belied by the fact that it only seeks damages and the return of media containing its alleged confidential and proprietary information. Answer and Counterclaim, Dkt. No. 23 at 31:18-19, 36:1-3.

nPP then erroneously suggests that *Mattel* supports the notion that because its conversion claims are based on tangible items, they should survive preemption. Opp., Dkt. No. 34 at 14:19-35. The *Mattel* court did note that Mattel's conversion claim could survive to the extent that it was based on "sketches and sculpts had some value apart from the information they embodied." 782 F. Supp. 2d at 997. However, the *Mattel* court also held that Mattel's conversion claim *did not* "survive [preemption] to the extent predicated upon the physical documents allegedly misappropriated by Mattel's former employees because Mattel cannot show that the documents had any value 'apart from the information contained therein.'" *Id.*

The *Mattel* court thus made clear that simply alleging the existence of physical property containing or embodying the same confidential information that is subject to a CUTSA claim is not enough to avoid preemption. Rather, the claimant must allege facts establishing that such property has some value independent from the information contained therein. This is consistent with the holding in *Silvaco* that "[i]f the only arguable property identified in the complaint is a trade secret, and the only basis for any property right is trade secrets law, then a conversion claim predicated on the theft of that property is unquestionably 'based upon misappropriation of a trade secret' . . . and the conversion claim is preempted." 184 Cal.App.4th at 238. Here, nPP fails to allege that any of its "materials, documents, files, and models" has any value apart from containing or embodying nPP's alleged trade secrets. In fact, the allegations in the Counterclaim confirm that the value of such property is solely derived from being confidential and proprietary to nPP. *See*, *e.g.*, Opp., Dkt. No. 34 at 31:18-19, 32:4-5, 36:1-3.

nPP also mistakenly relies up on dicta in *Angelica Textile Servs., Inc. v. Park*, 220 Cal.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8

- 5 -

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

App. 4th 495 (2013) to argue that a claim for conversion of physical property also containing trade secrets are not preempted by a CUTSA claim also alleged. *See* Opp., Dkt. No. 34 at 11:20-12:9. nPP misses the holding in that case because

> the court in *Angelica* did not hold that tangible personal property automatically confers a separate property right that cannot be preempted. Instead, the court's holding in *Angelica* comports with the holding in *Silvaco Data Systems* – namely, that a common law claim survives preemption if its property interest is not rooted in the property's status as a trade secret.

*TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*, No. CV 15-07595-AB (EX), 2016 WL 3475322, at *7 (C.D. Cal. Jan. 29, 2016) (rejecting similar arguments under *Angelica* that conversion based on the theft of personal property rather than intangible information cannot be preempted by CUTSA because " '[t]angible personal property confers separate property rights than the rights conferred to trade secrets.' "). Moreover, unlike the plaintiff in *Angelica*, nPP has never alleged facts in the three complaints filed in the State Court Action or its Counterclaim establishing that nPP converted tangible items other than what amounts to its confidential and proprietary "property," *i.e.* its alleged trade secrets. *See*, *e.g.*, Opp., Dkt. No. 34 at 31:7-12, 31:18-19, 31:23-28, 32:4-5, 36:1-3.

Finally, nPP misconstrues the holding in *Loop AI Labs Inc. v. Gatti*, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015). The court in that case recognized that a conversion claim "arising from the same allegations of misappropriation that underlay its CUTSA claim" is preempted. The *Loop AI* court did not find preemption because the conversion claim was based on an employee's alleged theft of an item that was clearly identified as a piece of tangible property, *i.e.* a work computer. *Id.* Unlike the plaintiff's identification of a physical item in *Loop AI Labs*, nPP's Counterclaim only denotes unspecified "materials, documents, files, and models," in which nPP interchangeably refers to as "confidential and proprietary property" and "confidential and proprietary information." This, along with incorporating by reference the same factual allegations regarding Avago's alleged misappropriation of nPP's confidential and proprietary "property" as nPP's trade secret claim, shows that there is no tangible property that is separate and distinct from whatever that contains nPP's alleged confidential and proprietary information. *See* Answer and Counterclaim, Dkt. No. 23 at 31:6, 31:22. nPP essentially alleges that Avago

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8                                    - 6 -
REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

violated nPP's rights by acquiring nPP's confidential and proprietary "property" under the NDAs and disclosing and/or using such "property" without consent (i.e. misappropriating). *Id.*, at 31:7-12, 31:18-19, 31:23-28, 32:4-5, 36:1-3. Accordingly, because nPP alleged nothing other than the "materials, documents, files, and models" which contain its "confidential and proprietary information," the CUTSA preempts nPP's counterclaims for conversion and specific recovery of personal property.

### C. The Counterclaim Fails to Allege Any Acts of Trade Secret Misappropriation that Occurred After the DTSA's Effective Date of May 11, 2016

nPP does not dispute that the DTSA only applies to acts of misappropriation that occur on or after its date of enactment, May 11, 2016. *See* Opp., Dkt. No. 34 at 16:10-12. nPP also effectively concedes that there is no viable DTSA claim alleged in the Counterclaim based on the '025 Patent, which indisputably published prior to May 11, 2016. *See id.* at 17:21-25; *see also* Answer & Counterclaim, Dkt. No. 23 at 28:16-21, Exh. D. However, nPP insists that it has sufficiently stated a claim under the DTSA with respect to the '379 Application and the '360 Patent based on two alleged acts of misappropriation that occurred after that date.[1] The first is Avago's alleged disclosure of nPP's confidential and proprietary information by publicly filing an appeal brief in relation to the '379 Application on or about on July 5, 2016. Answer & Counterclaim, Dkt. No. 23 at 28:5-15, 33:9-16. The second alleged post- May 11, 2016 act of misappropriation is the USPTO's publication of the application which issued as the '360 Patent. *Id.* at 28:16-29:6, 33:9-16.

---

[1] nPP's Counterclaim only general alleges these additional acts of misappropriation that amount to the disclosure of nPP's purported confidential and proprietary information. nPP's Opposition attempts to add additional facts concerning Avago's post-DTSA acts of misappropriation, which goes beyond what can reasonably be inferred from the allegations in the Counterclaim. *See* Opp., Dkt. No. 34 at 17:25-18:15 ('379 Application) and 18:16-19:5 ('360 Patent). Such new "facts" cannot be considered in ruling on Avago's motion to dismiss. *See Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998) ("[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss") (citation omitted); *see also Western Mining Counsel v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) (while a court is required to interpret the pleadings liberally on a motion to dismiss, it need not accept unreasonable inferences or unwarranted deductions of fact).

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8                                    - 7 -

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

What nPP fails to appreciate is that these acts cannot constitute misappropriation because nPP's very own Counterclaim makes clear that no such trade secrets could have been used or disclosed by Avago after May 11, 2016 because the information had already been made public. In this regard, the drafters of the DTSA adopted its definitions of "trade secrets" and "misappropriation" from the Uniform Trade Secrets Act (UTSA). *See* S. Rept. 114-220, March 7, 2016 at p. 10 ("The Committee does not intend for the definition of a trade secret to be meaningfully different from the scope of that definition as understood by courts in States that have adopted the UTSA * * * [and] 'misappropriation' is defined identically in all relevant respects to the definition of misappropriation in [] the UTSA."); *accord* H. Rept. 114-529, April 26, 2016, at p. 14.  Thus, CUTSA decisions are instructive in interpreting analogous provisions of the DTSA.

It is indisputable that the '379 Application first published on April 24, 2014 (Answer and Counterclaim, Dkt. No. 23 at 27:16-18), thereby extinguishing any alleged trade secrets contained or used therein—any subsequent publication of a document the same information would have no significance.  There are no other allegations in the Counterclaim that suggest any new or additional confidential and proprietary information relating to the '379 Application was used or disclosed by Avago in the further prosecution of the '379 Application or filing of an Appeal Brief with the USPTO.  Rather, the Counterclaim confirms that the same alleged trade secrets were first used and disclosed in the '370 Application ***prior to DTSA's effective date*** and then simply "re-disclosed" in the Appellate Brief thereafter.  *Compare* Answer and Counterclaim, Dkt. No. 23 at 27:18-24 *with* 28:9-15.

More importantly, nPP's attempt to use the Appellate Brief as a post-DTSA act of misappropriation is undermined by its own act of filing a patent application containing the same alleged confidential and proprietary information that was disclosed in the '379 Application.  On April 23, 2015, nPP filed U.S. Patent Application No.14/695,008, entitled "Coupling Device Having a Stamped Structured Surface for Routing Optical Data Signals" ("the '008 Application"), and on December 10, 2015 it published.  *See* Opp., Dkt. No. 34 at 11:1-3; Declaration of C. Gideon Korrell in Support of Reply in Support of Motion to Dismiss Counterclaimants' First

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8                                           - 8 -

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

Through Sixth Counterclaims ("the Korrell Decl."), Exh. 1, at p. 1.  In the '008 Application, nPP copied verbatim the invention claims from those that were in the '379 Application. *Compare* Korrell Decl., Exhibit 1 ('008 Application, claims 1-27)  *with* Exhibit 2 ('379 Application, claims 1-27). This was apparently done by nPP in order to satisfy the requirements for instituting a derivation proceeding. *See* 37 C.F.R. § 42.405(a) ("The petition must . . . (2) Show that the petitioner has at least one claim that is: (i) The same or substantially the same as the respondent's claimed invention . . . ."); *see also* Korrell Decl. Exhibit 4, (Petition to Institute Derivation Proceeding), at p. 41 ("[A]ll of the challenged claims of the Respondents are drawn to the same or substantially the same invention as the disclosed invention.").  Thus, by intentionally inserting the invention claims of the '379 Application into the '008 Application (and the remainder of the specification presumably describing each of the claimed inventions sufficiently), nPP affirmatively disclosed the inventions they now allege to be trade secrets.

As a result, nPP independently relinquished trade secret protection of its confidential and propriety information allegedly contained in the '379 Application *five months prior to the enactment of the DTSA*.  *See* 18 U.S.C.A. § 1839(3); *see also Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) (recognizing that under the CUTSA "that disclosure of a trade secret in a patent places the information comprising the secret into the public domain") (citation omitted); *accord Forcier v. Microsoft Corp.*, 123 F.Supp.2d 520, 528 (N.D.Cal. 2000) (alleged trade secrets were not entitled to protection because they had been placed in the public domain either in patents or in patent applications).  Avago therefore cannot be held liable as a matter of law for any alleged acts of misappropriation of such information that occurred after nPP's own disclosure, including the filing of the Appellate Brief.

nPP further admits that its alleged trade secrets disclosed in the application that matured into the '025 Patent (U.S. Pat. App. 13/329,380) and its continuation application that matured into the '360 Patent (U.S. Pat. App. 14/666,427) were extinguished via the initial publication of their respective applications:

> Avago Technologies, without the express or implied consent of nPP, took ***nPP's confidential and proprietary information*** and included it in the Avago Applications naming McColloch as the inventor.  The Avago Applications

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8                                                      - 9 -
REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

> *disclosed such information* to the world *when the applications were published and again when the '025 Patent issued, destroying the confidentiality and secrecy of the information provided under the NDA and NDA II.* Avago *again disclosed such information* to the world by its continued prosecution of the Avago Applications, including, publicly filing the Appeal Brief at the PTO on July 5, 2016, and causing the '360 Patent to issue and publish on July 26, 2016.

Answer and Counterclaim, Dkt. No. 23 at 33:9-16. Both of these applications published well before May 11, 2016. *See id.* at 28:16-24 (admitting that the USPTO published the '380 Application in 2011 and the '427 Application in 2015). nPP's Counterclaim does not allege that there was a disclosure of any nPP confidential and proprietary information other than what had been previously disclosed in its underlying '427 Application.

Likewise, there are no allegations in the Counterclaim that any additional confidential and proprietary information allegedly belonging to nPP was disclosed in the publication of the application that issued into the '360 Patent. To the contrary, nPP alleges that the *same information* was used and disclosed in the application for both patents:

> The application which led to the '025 Patent, and *has the same specification* as that which led to the '360 Patent, also used nPP's proprietary and confidential information as the primary basis to prepare the applications. *These two applications included the concepts developed by nPP and provided to McColloch and Avago Technologies . . . .*

Answer and Counterclaim, Dkt. No. 23 at 28:25-29:6 (emphasis added). Because the disclosure of the '360 patent and the '250 patent are the same, and all of the information in the '025 Patent was disclosed when its application published in 2013, the publication of the application for the '360 Patent cannot constitute an additional act of misappropriation.[2]

---

[2] nPP argues that because the claims of the '360 Patent are different from the '025 Patent, then additional confidential and proprietary information must have been misappropriated. Not only does this run contrary to nPP's allegations in the Counterclaim that the exact same information was used and disclosed, but also ignores the fundamental principle of patent law that any claimed invention must be described in the specification. *See* 35 U.S.C. § 112(a) (the "specification shall contain a written description of the invention . . . ."); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 920-23 (Fed. Cir. 2004) ("the specification . . . must . . . describe the claimed invention so that one skilled in the art can recognize what is claimed.").

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8                                              - 10 -
REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

**D.** ***Adams Arms, LLC v. Unified Weapon Sys., Inc.* Cannot Save nPP's DTSA Claim Under the Facts Alleged in the Counterclaim**

Ignoring the aforementioned allegations in its Counterclaim and early publication dates of the relevant patent applications, nPP relies upon *Adams Arms, LLC v. Unified Weapon Sys., Inc.*, 2016 WL 5391394 (M.D. Fl. Sept. 27, 2016) for the proposition that "partial recovery is available for acts of misappropriation that occur after the effective date of the DTSA even if the original wrongful acquisition of the trade secret occurred prior to the effective date of the DTSA." Opp., Dkt. No. 34 at 16:15-17.  nPP's reliance on *Adams* is misplaced.  While the court found no facts alleged of any ***acquisition*** occurring on or after the effective date of the DTSA, it found misappropriation because the alleged trade secret information was first ***disclosed*** after the DTSA's effective date.  *Adams Arms*, 2016 WL 5391394, at *3, *6.

*Adams Arms* is inapplicable here because nPP's allegations make clear that Avago's disclosure of nPP's alleged trade secrets occurred prior to the enactment of the DTSA.  Because all alleged trade secret information contained in the '379 Application and the '360 Patent was lost by publication prior to May 11, 2016, no additional acts of misappropriation by disclosure could have occurred after the DTSA's enactment.

Thus, if any of the inventions contained in any of the Avago Applications were first invented by nPP, nPP's sole remedy is provided for under United States Patent Law.  *See Ultimax*, 587 F.3d at 1355 (recognizing that "[o]nce the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished and 'the patentee's only protection is that afforded under the patent law'") (citation omitted); *see also Simic-Glavaski v. Lifeware Technologies, Inc.*, No. 1:07CV2718, 2008 WL 423414 (N.D. Ohio Feb. 14, 2008) (granting defendant's motion to dismiss plaintiff's count alleging that the defendant misappropriated plaintiffs' property by failing to identify plaintiffs as the inventors of United States provisional patent application because jurisdiction to hear such a lied exclusively in the USPTO); *DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal.4th 864, 881 (2003), *as modified* (Oct. 15, 2003) ("Once the data that constitute a trade secret are disclosed to others, or others are allowed to use those data, the holder of the trade secret has lost his property interest in the data.").

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8                                    - 11 -

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

Accordingly, the Court should dismiss the Sixth Cause of Action in the Counterclaim as it fails to sufficiently allege any acts of misappropriation by Avago that occurred on or after the enactment of the DTSA.

**E.   Dismissal (or Stay) of nPP's First through Fifth Causes of Action is Necessary to Curtail nPP's Attempt to Further Game the Judicial Process**

The parties have agreed in principle to requesting that the Court exercise supplemental jurisdiction over nPP's First through Fifth Causes of Action.  Absent the Court doing so and nPP obtaining a stay of the same claims in the State Court Action, the Court should dismiss or stay these causes of action pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).  nPP has already lost in its attempt to include several of its causes of action in the State Court Action, and is now attempting to better its odds by bringing many of the same causes of action in federal court.  In doing so, nPP is clearly creating "a substantial danger of inconsistent judgments." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (1990).  This is one of the specific reasons for the *Colorado River* doctrine—to prevent a party from causing uncertainty and piecemeal litigation.  *See Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988) ("[p]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results" ).

Contrary to nPP's claim that "[the State Court Action] has not advanced in any significant way" (*see* Opp., Dkt. No. 34 at 7:6-7), there have indeed been significant developments in the State Court Action.  It is just that the rulings have been adverse to nPP.  Most notable is the state court's sustaining of Avago's demurrer to nPP's conversion and specific recovery of personal property claims.  *See* Order Re: Demurrer and Motion to Strike, Dkt. No. 29-4 at 8:27-10:27 Although nPP was granted leave to amend these causes of action, its amendments still fall short of the minimum pleading requirements and are again subject to a demurrer in the State Court Action.  Therefore, nPP should not be allowed to create a possibility where nPP may obtain a different ruling in this Court than it has already received in the State Court Action.[3]  *See Nakash*

---

[3] nPP cites to *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998 (N.D. Cal. 2016) for the proposition that where state law claims share common issues of fact with the federal claims "the desire to avoid

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

*v. Marciano,* 882 F.2d 1411, 1417 (9th Cir. 1989) (recognizing that filing a second suit in federal court in an attempt to forum shop or avoid adverse rulings by the state court weighs strongly in favor of abstention).

nPP also falsely asserts that it could not have brought a federal action to correct inventorship for the reason that "no patent had issued until after the filing of the initial state court action." Opp., Dkt. No. 34 at 7:22-24 (emphasis omitted). Although the USPTO did not issue the '025 patent until several months after nPP filed the State Court Action in February 2015, the patent examiner did file a Notice of Allowance several months before, in December 2014, notifying the public of all of the pending claims that were to be a part of the patent. Korrell Dec. Exh. 3 ('380 Application, Notice of Allowance), at p.3. nPP states that it learned of the publication of the '379 Application in August 2014. Answer and Counterclaim, Dkt. 23 at ¶ 47. It is not difficult to imagine that nPP also looked for other publicly availably pending patent applications naming Mr. McColloch as an inventor and learned of the application about to issue as the '025 Patent.

nPP also wrongly seeks to distinguish the *Am. Int'l Underwriters* case on facts that are inapposite. Opp., Dkt. No. 34 at 9:5-14. nPP tries to find some significant difference in whether the identical causes of action from a state case were included in an original complaint (*Am. Int'l Underwriters*) or in counterclaims (nPP). *Id.* There is no material difference between the two— both are identical causes of action copied from the state proceeding and brought into the federal action. Indeed, there is no dispute that the Counterclaim raises issues and claims ***identical*** to those currently pending in the State Court Action. [4] As such, the state court's adjudication of

___

piecemeal litigation would not be well-served by a stay of the state law claims." Opp., Dkt. No. 34 at 6:18-24. nPP misstates the holding in that case. The court in *Tan* did not stay the case under *Colorado River* because plaintiff had asserted both federal and state claims in the federal case. Rather, the plaintiff had asserted additional ***state claims*** in the federal action and court was not inclined to issue a partial stay of the duplicative ***state claims*** asserted in both the federal case and parallel state case. *Tan*, 171 F. Supp. 3d at 1015. nPP's citation to *Melt Franchising, LLC v. PMI Enterprises, Inc.*, 2008 WL 4811097 (C.D. Cal. Oct. 27, 2008) for the same proposition is also erroneous. *See* Opp., Dkt. No. 34 at 6:18-24. Here, nPP has asserted ***identical*** state claims in both this action and the State Court Action.

[4] Curiously, nPP argues in its Opposition that Avago's federal inventorship claims and nPP's state

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

these claims could result in inconsistent rulings, which weights in favor of abstention. The fact that nPP asserted identical causes of action in its Counterclaim in an apparent attempt to forum shop and avoid additional adverse rulings in the State Court Action, also weighs strongly in favor of abstention. The Court should therefore, at a minimum, stay nPP's First through Five Casues of Action in the Counterclaim pending the Court exercising supplemental jurisdiction and nPP obtaining a stay of the State Court Action.

### F.   The Court Should Deny nPP Leave to Amend its Fourth Through Sixth Causes of Action

When nPP was previously granted leave to amend its common law causes of action, it refused follow the state court's instruction to allege any facts that support its claims and avoid preemption. In fact, nPP previously had three opportunities in the State Court Action to allege facts that would set its conversion and specific recovery of personal property claims apart from its CUTSA claim. Even after Avago raised the issue in meet and confer to add such allegations, nPP vehemently refused to do so. Even when the court in the State Court Action provided explicit guidance as to how nPP should amend its claims, nPP has remained recalcitrant. Thus, there is nothing to indicate that nPP has any facts that it could allege that would avoid preemption of its conversion and specific property counterclaims.

Similarly, nPP should additionally be denied an opportunity to amend its cause of action under the DTSA because there is nothing that it can allege that would avoid the simple fact that all alleged misappropriations (by both acquisition and disclosure) took place before the enactment of the statute. Thus, granting leave to amend would be futile.

/ / /

/ / /

---

trade secret misappropriation and breach of contract counterclaims both require a determination as to whether the Plaintiffs developed the technology at issue independently without use of any nPP information. Opp., Dkt. No. 34:1-7. This is inconsistent with nPP's prior arguments that the state court lacks jurisdiction to rule on any of nPP's state law claims related to the Avago Applications because there must first be a determination of inventorship, which is within the exclusive purview of federal patent law. *See* Order Re: Demurrer and Motion to Strike, Dkt. No. 29-4 at 13:8-14:4.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8

- 14 -

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS

## III.    CONCLUSION

For the reasons set forth in Avago's moving papers and those set forth herein, Avago respectfully requests that the Court grant this motion in its entirety.

Date:  December 9, 2016

HOPKINS & CARLEY
A Law Corporation


By:*/s/ John V. Picone III*
    John V. Picone III
    Jeffrey M. Ratinoff
    C. Gideon Korrell
    Attorneys for Plaintiffs
    AVAGO TECHNOLOGIES LIMITED, USA,
    AVAGO TECHNOLOGIES U.S. INC., AVAGO
    TECHNOLOGIES GENERAL IP (SINGAPORE),
    PTE. LTD and LAURENCE MCCOLLOCH

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\1409766.8

- 15 -

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMANTS' FIRST THROUGH SIXTH COUNTERCLAIMS; CASE NO. 3:16-CV-03737 JCS