UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVAGO TECHNOLOGIES U.S. INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NANOPRECISION PRODUCTS, INC.,<br><br>Defendant. | Case No. 16-cv-03737-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 29 |

## I.   INTRODUCTION

In this action, Plaintiff and Counter-Defendants Avago Technologies U.S., Inc., Avago Technologies General IP (Singapore), PTE, Ltd., and Laurence McColloch (collectively, "Avago") seek a declaratory judgment of correct inventorship. Counterclaimants nanoPrecision Products, Inc., Michael K. Barnoski, Robert R. Vallance, Shuhe Li and King-Fu Hii (collectively, "nPP") have, in turn, asserted eight Counterclaims against Avago in their Answer and Counterclaim. Presently before the Court is Avago's Motion to Dismiss Counterclaimants' First through Sixth Counterclaims ("Motion"). The Court finds that the Motion is suitable for determination on the papers pursuant Civil Local Rule 7-1(b). For the reasons stated below, the Motion is GRANTED.[1]

## II.   BACKGROUND

### A.   Factual Background

Avago is a global supplier of "fiber optic communications modules used in optical networks for transmitting and receiving optical data signals." First Amended Complaint ("FAC")

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

¶ 14; *see also* Answer ¶ 14. [2] During the relevant time period, Lawrence McColloch was employed as an engineer at Avago. FAC ¶ 15; Answer ¶ 15. According to Avago, McColloch's work at Avago had included the design and manufacture of fiber optic communications modules and for many years he had been working on developing the design of single mode optical benches. FAC ¶ 16.

nPP alleges that it is a "world leader in the field of complex material forming with nanometer accuracies and tolerances." Counterclaim ¶ 2. According to nPP, it developed a "proprietary manufacturing process," including a "proprietary stamping processes that can produce a variety of 3D components made of metals such as Kovar, stainless steel, aluminum, copper, or titanium." *Id*. In July of 2010, nPP began communicating with Avago Technologies regarding nPP's capabilities to precision stamp various components for fiber optic applications, including optical benches. *Id*. ¶ 13. On July 16, 2012, after Avago and nPP had entered into a non-disclosure agreement ("NDA"), representatives of nPP and Avago Technologies had their first in-person meeting. *Id*. ¶ 15. McColloch was one of the individuals who attended this meeting for Avago. *Id*.

According to Avago, at the July 16, 2010 meeting McColloch shared his optical bench design that could be manufactured by a stamping process with nPP. FAC ¶ 21. nPP, in turn, made a presentation about its precision metal stamping capabilities. *Id*. ¶ 20. nPP alleges that it disclosed confidential and proprietary information about its stamping process, answering many questions from McColloch, who allegedly "stated that he was unaware of the possibility of using a stamped bench in place of a silicon bench in such optoelectronic applications." Counterclaim ¶ 16. Avago, on the other hand, alleges that "McColloch had first considered making a stamped optics for fiber optic use as early as in 2001 and was first exposed to the idea of stamping optics as early as 1983." FAC ¶ 17.

Avago and nPP continued to communicate about the possibility of working together and a

---

[2] nPP's Answer and Counterclaim is a single document. *See* Docket No. 23. The Court cites separately to the "Answer" or the "Counterclaim" only to indicate the section of the document to which it refers as the paragraphs are separately numbered in the two sections.

1    number of meetings were held between July 2016 and May 30, 2012.  Counterclaim ¶¶ 19-41.

2    nPP alleges that during this period it sent confidential and proprietary bench designs and

3    PowerPoint slides to Avago and that it prepared "solid models" as well.  *Id.*  Avago, in turn,

4    alleges that McColloch shared with nPP . . . several of his proposed stamped optical bench designs

5    during the course of these meetings and communications.  FAC ¶ 22.  According to nPP, the

6    parties entered into a second non-disclosure agreement on May 30, 2012 due to nPP's concern that

7    the first one had expired.  Counterclaim ¶ 38.   In the end, the parties did not enter into an

8    agreement; instead, on July 24, 2012, Avago informed nPP that "there would be no deal."  *Id.*  ¶

9    42.

10   While the discussions with nPP were still underway, on December 19, 2011, McColloch

11   filed U.S. Patent Application No. 13/329,380 entitled "Modified Transistor Outline (TO)-CAN

12   Assembly for Use in Optical Communications and a Method" ("the '380 Application") and

13   assigned ownership thereof to Avago IP.  FAC ¶ 25 & Ex. 1 ('025 Patent).  The '380 Application,

14   issued as United States Patent No. 9,011,025 ("the '025 Patent") on April 21, 2015 and lists a prior

15   publication date of June 20, 2013.  FAC, Ex. 1.

16   On October 23, 2012, McColloch filed U.S. Patent Application No. 13/658,379 entitled

17   Stamped Metal Optic for Use in an Optical Communications Module ("the '379 Application") and

18   assigned ownership thereof to Avago Technologies General IP (Singapore) PTE. LTD.  FAC ¶ 23

19   & Ex. 4 ('379 Application).   On April 24, 2014, the USPTO published the '379 Application.  *Id*.

20   According to Avago, the '379 Application claims stamped optical bench designs, some of which

21   McColloch had disclosed to nPP during the course of the parties' business discussions under the

22   NDA, but it also contained embodiments of stamped optical benches that were not disclosed to

23   nPP during those discussions. *Id*.

24   On March 24, 2015, Avago filed U.S. Patent Application 14/666,427 ("the '427

25   Application"), which is a continuation of the '380 Application. FAC ¶ 26.  While the claims of the

26   '427 Application were new, the specification was identical to the specification of the '380

27   Application.  On July 9, 2015, the USPTO published the '427 Application, and it issued as the

28   '360 Patent on July 26, 2016. FAC, Ex. 2.

nPP contends all three applications – the '379 Application, the '380 Application and the the '427 Application (collectively, the "Avago Applications") – used the confidential and proprietary information that it disclosed to Avago under the NDAs. *See generally* Counterclaim.

On February 19, 2015, nPP filed a complaint in the Superior Court of the State of California in Santa Clara County ("the State Court Action") against Avago; it filed a First Amended Complaint on April 9, 2015 alleging breach of contract, trade secret misappropriation under the California Uniform Trade Secrets Act ("CUTSA"), intentional interference with contractual relations, unfair competition, conversion, specific recovery, breach of fiduciary duty, unjust enrichment, fraud, and declaratory relief. *See* Ratinoff Decl., Ex. 2 (State Court Action FAC).[3]

On April 23, 2015, nPP filed a patent application entitled "Coupling Device Having a Stamped Structured Surface for Routing Optical Data Signals" and was assigned U.S. Patent Application No. 14/695,008 ("the '008 Application"). FAC ¶ 31. Avago alleges that nPP used inventions that were previously disclosed in Avago's '379 Application to prepare the '008 Application. *Id.* nPP, on the other hand, contends the '379 Application discloses inventions by nPP employees, not McColloch. Therefore, on April 24, 2015, nPP sought to initiate a derivation proceeding to correct the listing of named inventors on Avago's '379 Application by filing a Petition to Institute Derivation Proceeding with the USTPO. Ratinoff Decl., Ex. 1. That petition is still pending.

In the meantime, the State Court Action went forward and on April 1, 2016 the Superior Court granted in part Avago's demurrer, finding that six of nPP's claims, including its claims for conversion and specific recovery of personal property, were preempted by the CUTSA. Ratinoff Decl., Ex. 3 at 6-11. The State Court permitted nPP to amend its complaint to include allegations to show, if it could, that the dismissed claims were not preempted and on May 2, 2016, nPP filed a second amended complaint in the State Court Action that again included claims for conversion

---

[3] Avago requests that the Court take judicial notice of the pleadings in the State Court Action as well as documents of public record filed in or issued by the United States Patent Office. *See* Docket Nos. 29-7, 35-6.   nPP has not objected to these requests, which are GRANTED.

and specific recovery of personal property. Ratinoff Decl., Ex. 4. Avago filed another demurrer, which was set to be heard on January 27, 2017. On December 13, 2016, however, the parties entered into a stipulation pursuant to which nPP agreed to seek a stay of the State Court Action if this Court agreed to exercise supplemental jurisdiction over the state law counterclaims that nPP asserted in the instant action in its October 17, 2016 Answer and Counterclaim (Docket No. 23). Under the stipulation, Avago also agreed to withdraw its argument that this Court should dismiss Counterclaims One through Five under the *Colorado River* doctrine because they are identical to claims previously asserted by nPP and still pending in the State Court Action. The Court approved that stipulation on December 15, 2016. *See* Docket No. 37.

### B. The Instant Action and nPP's Counterclaims

Avago initiated this action on July 1, 2016, seeking a declaratory judgment of correct inventorship of the '025 Patent. Complaint. After the '360 Patent issued, on July 26, 2016, Avago filed its First Amended Complaint to seek the same relief as to that patent as well. *See* Docket No. 15.

nPP filed its Answer and Counterclaim on October 17, 2017. In the Counterclaim, nPP alleges that "Avago IP and McColloch brazenly used nPP's proprietary and confidential information as the primary basis to prepare the ['379 Application]." Counterclaim ¶ 44. In particular, nPP alleges:

> [The '379 Application] included the concepts developed by nPP and provided to McColloch and Avago Technologies under the NDA, which were clearly marked and identified as confidential and proprietary to nPP including: a stamped bench with a curved mirror or a flat mirror, a fiducial for a pick-and-place operations with visual alignment, gussets for structural integrity of the mirror surface, pockets for locating a ball lens, and pockets with alignment edges for accurately locating electro-optical chips such as edge-emitting lasers or photodiodes.

*Id.* ¶ 45. nPP alleges that further disclosures of its confidential and proprietary information were made by Avago and McColloch during the prosecution of the '379 Application. *Id.* ¶ 48 ("This continued prosecution evidences further misappropriation, disclosure, and use of nPP confidential and proprietary information by Avago Technologies and McColloch.").

nPP made similar allegations about the applications that led to the '025 Patent and the

'360 Patent, the '380 Application and the '427 Application, respectively.  Counterclaim ¶ 50.

Specifically, nPP alleges:

> These two applications included the concepts developed by nPP and provided to McColloch and Avago Technologies under the NDA, which were clearly marked and identified as confidential and proprietary to nPP including a fiber optic connector component with an opening at its side wall for receiving a portion of an optical fiber at a non-zero degree angle α, relative to an axis that is generally normal to a printed circuit board, with a groove formed in it for accepting a portion of the optical fiber, with a reflector (mirror) that folds an optical pathway by the angle α, and with a recess formed adjacent to an end of the groove, wherein the reflector is disposed opposite the end of the groove.

*Id*.

The Counterclaim asserts the following causes of action: 1) breach of contract; 2) misappropriation of trade secrets under the CUTSA; 3) conversion; 4) specific recovery of personal property; 5) declaratory relief; 6) trade secret misappropriation under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836; 7) correction of named inventor on '025 Patent; and 8) correction of named inventor on '360 Patent.

In Claim Three, for conversion, nPP incorporates all of the preceding allegations in the Counterclaim.  *Id*. ¶ 66.  It goes on to allege:

> nPP is the owner of the confidential and proprietary information provided to McColloch and Avago Technologies under the NDA and NDA II as set forth above. As alleged above, Avago Technologies is in possession of nPP's materials, documents, files, and models marked confidential and proprietary and disclosed under the NDA and NDA II. nPP is entitled to possession of such withheld confidential and proprietary property provided under the NDA or NDA II.

*Id*. ¶ 67.  nPP alleges that it has "demanded return of its property by asking for the return of confidential materials, documents, files, and models" disclosed to Avago and that it has suffered and continues to suffer damage as a result of Avago's "improper possession, use, and publication of its confidential and proprietary property."  *Id*. ¶ 69-70.

In Claim Four, for specific recovery of personal property, nPP incorporates all of the preceding allegations of the Counterclaim, including the allegations in the conversion claim.  *Id*. ¶ 71.   It further alleges:

> nPP is the owner of the confidential and proprietary information provided to McColloch and Avago Technologies under the NDA and NDA II as set forth above. As alleged above, Avago Technologies generally and Avago IP in particular are in wrongful possession of nPP's materials, documents, files, and models marked confidential and proprietary and disclosed under the NDA and NDA II. nPP is entitled to possession of such withheld confidential and proprietary property.

*Id*. ¶ 72. nPP goes on to allege that "Avago Technologies generally and Avago IP in particular have improperly taken nPP's property, without nPP's consent, in the form of improperly withheld materials, documents, files, and models" and that "[t]he confidential and proprietary physical property taken by Avago Technologies generally and Avago IP in particular is very valuable." *Id*. ¶¶ 73-74.

In Claim Six, for trade secret misappropriation under DTSA, nPP incorporates all the preceding allegations of the Counterclaim. *Id*. ¶ 80. It further alleges in support of the claim that Avago "acquired nPP's confidential and proprietary trade secret information pursuant to the NDA and NDA II" and that Avago "without the express or implied consent of nPP, took nPP's confidential and proprietary information and included it in the Avago Applications naming McColloch as the inventor." *Id*. ¶¶ 83-84. nPP goes on to allege the following specific violations:

> Avago Technologies, without the express or implied consent of nPP, took nPP's confidential and proprietary information and included it in the Avago Applications naming McColloch as the inventor. The Avago Applications disclosed such information to the world when the applications were published and again when the '025 Patent issued, destroying the confidentiality and secrecy of the information provided under the NDA and NDA II. Avago again disclosed such information to the world by its continued prosecution of the Avago Applications, including, publicly filing the Appeal Brief at the PTO on July 5, 2016, and causing the '360 Patent to issue and publish on July 26, 2016.

*Id*. ¶ 84.

### C. The Motion

In the Motion, Avago asserts Claims Three and Four should be dismissed because they are preempted by the CUTSA. It further argues that these claims should be dismissed *without* leave to amend because nPP was already given an opportunity to amend them in the State Court Action and failed to fix the problem relating to CUTSA preemption. Avago also challenges Claim Four

7

1  on the basis that specific recovery of personal property is merely a remedy and not a separate
2  claim. Avago seeks dismissal of Claim Six, under DTSA, on the basis that all of the relevant
3  conduct alleged in support of that claim occurred before DTSA came into effect, on May 11, 2016.
4  nPP counters that the allegations supporting its claims for conversion and specific recovery
5  of personal property are sufficient to avoid CUTSA preemption, at least at the pleading stage of
6  the case. It also argues that California law supports the conclusion that specific recovery of
7  personal property may be asserted as a claim in its own right. It further contends its DTSA claim is
8  premised, at least in part, on conduct that occurred after May 11, 2016 and therefore, that that
9  claim should not be dismissed.

## III. ANALYSIS

### A. Legal Standard under Rule 12(b)(6)

A complaint (or here, counterclaim) may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

"[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a [pleading] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B. CUTSA Preemption

#### 1. The CUTSA

The CUTSA is codified in sections 3426 through 3426.11 of the California Civil Code. It contains a "savings clause" that provides, in relevant part, that the CUTSA "does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, [or] (2) other civil remedies that are not based upon misappropriation of a trade secret . . . ." Cal. Civ. Code § 3426.7(b). Based on the CUTSA's "comprehensive structure and breadth," California courts and federal courts applying California law have found that "section 3426.7, subdivision (b), preempts common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" *Id.* (quoting *Digital Envoy, Inc. v. Google, Inc.*, 370 F.Supp.2d 1025, 1035 (N.D. Cal. 2005); *see also Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010), as modified on denial of reh'g (May 27, 2010), disapproved of on other grounds by *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)) ("CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret'") (quoting Cal. Civ. Code § 3426.7(b)).

Courts in this District have concluded, based on the *Silvaco* decision, that CUTSA preemption extends to claims based on the misappropriation of confidential and proprietary information, regardless of whether it qualifies as a "trade secret." *See SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *5-6 (N.D. Cal. Dec. 11, 2012) ("absent 'convincing evidence that' the California Supreme Court 'would decide [this issue] differently,' this Court believes it prudent to follow *Silvaco*"); *Heller v. Cepia, L.L.C.*, No. C 11-

9

01146 JSW, 2012 WL 13572, at *7 (N.D. Cal. Jan. 4, 2012), aff'd in part, 560 F. App'x 678 (9th Cir. 2014) ("*Silvaco* also made clear that common law claims premised on the wrongful taking of information that does not qualify as a trade secret are also superseded, unless the plaintiff identifies some law which confers property rights protecting the information"); *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F.Supp.2d 911, 987 (C.D.Cal.2011) ("UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret").

In *Silvaco*, the California Court of Appeal expressed disapproval of a decision by a Pennsylvania district court in which that court declined to dismiss a claim for conversion on the basis of preemption under the Pennsylvania Uniform Trade Secrets Act because it was "yet to be determined whether the information at issue constitutes a trade secret." *Silvaco*, 184 Cal. App. 4th at 239 n. 22; *Cenveo Corp. v. Slater*, No. CIV A 06-CV-2632, 2007 WL 527720, at *3 (E.D. Pa. Feb. 12, 2007). The *Silvaco* court opined:

> We emphatically reject the *Cenveo* court's suggestion that the uniform act was not intended to preempt "common law conversion claims based on the taking of information that, though not a trade secret, was nonetheless of value to the claimant." . . . On the contrary, a prime purpose of the law was to sweep away the adopting states' bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using "information . . . of value." . . . Central to the effort was the act's definition of a trade secret. . . . Information that does not fit this definition, and is not otherwise made property by some provision of positive law, belongs to no one, and cannot be converted or stolen. By permitting the conversion claim to proceed on a contrary rationale, the *Cenveo* court impliedly created a new category of intellectual property far beyond the contemplation of the Act, subsuming its definition of "trade secret" and effectively obliterating the uniform system it seeks to generate.

184 Cal. App. 4th at 239 n. 22. (2010). As Judge Koh noted in *SunPower*, "an argument could be made that the footnote [in *Silvaco*] is dicta as . . .there does not actually appear to have been any allegation by plaintiff that the information plaintiff was seeking to protect was not a trade secret and therefore not subject to trade secret law." *Sunpower*, 2012 WL 6160472, at *6 (citing *Silvaco*,184 Cal.App.4th at 239, where the *Silvaco* court stated that "[a]ll of [plaintiff's] claims, except its UCL claim . . . depend on [defendant's] supposed use, in [plaintiff's] words of 'software

10

. . . which embodies and uses . . . [plaintiff's] Trade Secrets.'"). Nonetheless, the undersigned finds that the reasoning of *Sunpower* is persuasive and therefore concludes that *Silvaco* should be followed on this question.

### 2. Claim Three (Conversion)

A claim for conversion must be based on "an actual interference with [the plaintiff's] ownership or right of possession." *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 136 (1990). Conversion "traditionally required a taking of tangible property, and thus was not available to remedy the misappropriation of something like a trade secret." *Silvaco*, 184 Cal. App. 4th at 239. To establish a claim of conversion, the plaintiff must show "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; and (3) damages." *In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003) (citing *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1065 (1998)).

Under *Silvaco,* if the only property identified in the complaint is confidential or proprietary information, and the only basis for any property right is trade secrets law, then a conversion claim predicated on the theft of that property is preempted. *See Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*, 944 F. Supp. 2d 775, 780 (N.D. Cal. 2013) (citing *Silvaco*, 184 Cal. App. 4th at 238). Courts in this District have found that this rule applies even if the information at issue is embodied in tangible property such as documents, computer disks or physical models, unless these physical objects have "some value apart from the information they embod[y]." *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 997 (C.D. Cal. 2011) (holding that conversion claim "predicated upon the physical documents allegedly misappropriated by [the defendant] [was preempted by CUTSA] because [the defendant] [could not] show that the documents had any value 'apart from the information contained therein.'")(citing *Thomas & Betts Corp. v. Panduit Corp.*, 108 F.Supp.2d 968, 973 (N.D. Ill.2000)); *see also MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1116 (N.D. Cal. 2012) (dismissing conversion claim at the pleading stage on basis of CUTSA preemption where plaintiff alleged that defendants "took and/or permitted to be taken . . . certain documents and data and computer data discs that contain or reference Plaintiff's Trade Secrets and other confidential and proprietary information," reasoning

11

that the plaintiff did not identify any specific property or "make any attempt to distinguish it from the trade secret material" identified in the complaint).

Here, Plaintiff has not identified in its conversion claim, or indeed, in the Counterclaim as a whole, any specific property that has value apart from the confidential information it contains. To the contrary, the allegations in the conversion claim identify the property that nPP seeks entirely with reference to the confidential information contained therein. *See* Counterclaim ¶¶ 66-67 (alleging that "nPP is the owner of the confidential and proprietary information provided to McColloch and Avago Technologies" under NDAs between Avago and nPP and that "Avago Technologies is in possession of nPP's materials, documents, files, and models marked confidential and proprietary and disclosed" under the NDAs and "is entitled to possession of such withheld confidential and proprietary property . . . ."). nPP may not evade CUTSA preemption simply by alleging that the confidential information at issue was written on a piece of paper or embodied in a model where there are no allegations suggesting that the tangible property described in the Counterclaim had any value apart from the confidential information disclosed in it. Therefore, the Court concludes that nPP's conversion claim, as currently alleged, is preempted by the CUTSA.

The Court rejects nPP's reliance on *Angelica Textile Servs. Inc. v. Park*, 220 Cal. App. 4th 495 (2013) for a contrary conclusion. In that case, the court of appeal upheld a jury verdict in favor of the plaintiff on a conversion claim where the defendant had "retained thousands of pages of documents" that the plaintiff owned. 220 Cal. App. 4th at 499. The jury also found that the defendant had not stolen any trade secrets. *Id*. The court held that "[a]lthough the documents may have little if any value in light of the jury's finding defendants did not appropriate any trade secrets, the defendant employee's possession of them will support a conversion claim independent of any trade secret." *Id*. The court in that case concluded that "because the asserted claim is not based on the existence of a trade secret, it was not displaced," citing *Silvaco*. The *Angelica* court did not directly address the question of whether of claim for conversion that alleges no facts showing that the physical objects at issue have independent value should be allowed to proceed.

At least one federal district court has concluded that *Angelica* "did not hold that tangible

personal property automatically confers a separate property right that cannot be preempted." *TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*, No. CV 15-07595-AB (EX), 2016 WL 3475322, at *7 (C.D. Cal. Jan. 29, 2016). The court in *TMC* concluded instead that "the court's holding in *Angelica* comports with the holding in *Silvaco Data Systems* – namely, that a common law claim survives preemption if its property interest is not rooted in the property's status as a trade secret." *Id.* (citing184 Cal. App. 4th at 238). Thus, in *TMC*, the court dismissed the plaintiff's conversion claim on the pleadings based on CUTSA preemption because the "allegations demonstrate[d] that the entire basis of [the plaintiff's conversion claim [was] [the defendant's] use of the same 'proprietary design drawings, manufacturing techniques, and manufacturing equipment including moulds and jigs' that Plaintiff defined as its protectable trade secrets." *Id*. at t *7 (C.D. Cal. Jan. 29, 2016). The undersigned agrees with the reasoning of *TMC* and reaches the same conclusion here.[4]

The Court also rejects nPP's reliance on *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015). In that case, the court found that a conversion claim was adequately alleged and was not preempted where it was based on the allegation that the defendant had stolen a particular piece of property, namely, the plaintiff's "work computer." *Id*. at *3. The court therefore concluded that the claim for conversion was "fundamentally different than the conversion claim at issue in *Sunpower*." *Id*. In *Sunpower*, the court explained, "the plaintiff alleged a conversion claim arising from the same allegations of misappropriation that underlay its CUTSA claim." *Id*. (citing 2012 WL 6160472 at *13).

This case is more like *Sunpower* than *Loop*; the only materials described in the Counterclaim are identified only generally as the confidential and proprietary materials that were provided to Avago under NDAs between Avago and nPP. *See* Counterclaim ¶¶ 50, 65, 66-67. These materials are the basis for both nPP's CUTSA Claim (Counterclaim Two) and its

---

[4] The Court also notes that to the extent *Angelica* might be read to suggest that a plaintiff can avoid CUTSA preemption of a conversion claim simply by alleging that documents were taken, without any allegation that those documents had independent value, the Court finds that conclusion to be inconsistent with California law as set forth in *Silvaco* and the cases that have applied the holding of *Silvaco* in connection with conversion claims involving documents and other physical embodiments of confidential information, such as *Mattel*, *MediaStream* and *TMC*.

conversion claim (Counterclaim Three). The only reasonable inference that can be drawn from nPP's allegations is that the property right at issue in the conversion claim derives from the confidential nature of the information contained in the materials nPP provided to Avago. In contrast to *Loop*, where a reasonable inference could be drawn that the tangible property at issue – a computer – had independent value apart from the confidential information it contained, there is no such allegation here.

Accordingly, the Court concludes that nPP's conversion claim, as currently alleged, is preempted by CUTSA and is subject to dismissal. Although Avago asks the Court to dismiss nPP's conversion claim with prejudice on the ground that the State Court previously dismissed the conversion claim on similar grounds, the undersigned declines to do so. Rather, nPP will be given an opportunity to amend its conversion claim to address the specific deficiencies that this Court has identified.

### 3. Claim Four (Specific Recovery of Personal Property)

Specific recovery of personal property is a remedy for conversion. *See State Farm Mut. Auto. Ins. Co. v. Dep't of Motor Vehicles*, 53 Cal. App. 4th 1076, 1082 (1997); *Fuhu, Inc. v. Toys "R" US, Inc*., No. 12CV2308-WQH-WVG, 2013 WL 12097569, at *15 (S.D. Cal. Mar. 1, 2013) ("Stated more simply, specific recovery is an available remedy for conversion. Because the Complaint supports a conversion claim, it also supports a specific recovery remedy"). Because nPP's Fourth cause of action, for specific recovery of personal property, is encompassed by its conversion claim, the Court dismisses the counterclaim for specific recovery of personal property with prejudice.

### C. Claim Six (DTSA)

nPP asserts a DTSA claim based on allegations that Avago misappropriated its trade secrets by acquiring its confidential business information and disclosing it in the Avago Applications and subsequent prosecution of those applications. Avago contends all of the actionable conduct alleged in the Counterclaim occurred before the DTSA came into effect and therefore, that the claim must be dismissed. The Court agrees.

Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil

1   action under . . . if the trade secret is related to a product or service used in, or intended for use in,
2   interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).  "Misappropriation" under DTSA
3   includes both the acquisition and disclosure of trade secrets.  18 U.S.C. §§ 1839(5)(A) & (B).  The
4   DTSA applies to "any misappropriation of a trade secret . . . for which any act occurs on or after
5   the date of the enactment of [the] Act." Defend Trade Secrets Act of 2016, PL 114-153, May 11,
6   2016, 130 Stat. 376.  The date of enactment was May 11, 2016.

Here, nPP does not dispute that the original wrongful acquisition of its confidential information, namely, Avago's receipt of nPP's confidential information in the course of the parties' business discussions that ended in 2012, occurred *before* the DTSA came into effect.  It nonetheless contends that Avago's continued use of its confidential information in the prosecution of the Avago Applications allows it to seek a partial recovery for misappropriation from the date the DTSA came into effect.  Significantly, nPP does not suggest that any *new* information was disclosed in the course of the patent prosecutions that had not been disclosed prior to DTSA's effective date.  Rather, it alleges that "Avago *again disclosed such information to the world* by its continued prosecution of the Avago Applications." Counterclaim ¶84 (emphasis added).

nPP's reliance on *Adams Arms, LLC v. Unified Weapon Sys., Inc.,* No. 8:16-CV-1503-T-33AEP, 2016 WL 5391394, at *1 (M.D. Fla. Sept. 27, 2016) in support of its position is misplaced.  In that case, the defendant argued that because some of the conduct at issue occurred before the effective date of DTSA, there was a single continuing misappropriation and therefore, that none of the conduct was actionable. 2016 WL 5391394, at *5.  The defendant relied on language in DTSA's statute of limitation provision stating that "[f]or purposes of this subsection, a continuing misappropriation constitutes a single claim of misappropriation." *Id*. (quoting 18 U.S.C. § 1836(d)).  But the court found that that language applied only to determinations of timeliness of a DTSA claim and did not preclude a DTSA claim based on acts that occurred *after* the effective date of the statute.  In that case, there were allegations that specific information had been disclosed (apparently for the first time) after the effective date of the DTSA and therefore, the court allowed the claim to go forward.  *Id*. at *6.

The situation here is entirely different from *Adams Arms*.  As currently alleged, the

15

confidential information at issue was disclosed when the Avago Applications were published, before the DTSA came into effect. nPP has not cited any authority suggesting that the DTSA allows a misappropriation claim to be asserted based on the continued use of information that was disclosed prior to the effective date of the statute. Simply alleging that the same information was disclosed "again" is not sufficient to avoid this result as "disclosure," by definition, implies that the information was previously secret. *See Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) ("Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished and the patentee's only protection is that afforded under the patent law.") (citation omitted). Because nPP has failed to allege any facts showing that acts of misappropriation occurred *after* DTSA came into effect, its DTSA claim fails on the pleadings.

For the reasons stated above, nPP's DTSA claim is dismissed with leave to amend to include, if it can, allegations showing that the DTSA claim is based on misappropriation that occurred after the effective date of that statute.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED. nPP's Third and Sixth causes of action are dismissed with leave to amend. nPP's Fourth cause of action is dismissed with prejudice. nPP shall file its amended Counterclaim within thirty (30) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: January 31, 2017

JOSEPH C. SPERO
Chief Magistrate Judge